**UNITED STATES of America, Plaintiff,**

v.

**Russell Martin BLISS, et al.,
Defendants.**

No. 84–200C(1).

United States District Court,
E.D. Missouri.

July 30, 1990.

Joseph Moore, Asst. U.S. Atty., A. Wiley Ray, Office of Enforcement & Compliance, E.P.A., Washington, D.C., Martha Steincamp, Cheryle Micinski, U.S.E.P.A., Region VII, Kansas City, Mo., Steven Baer, Env. Enforcement Section, Environment & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

F. William McCalpin, Lewis, Rice & Fingersh, St. Louis, Mo., for Independent Petrochem.

John Cole, Armstrong, Teasdale, Kramer & Vaughn, St. Louis, Mo., Lewis Booker, Hunton & Williams, Richmond, Va., for Syntex defendants.

Ted Perryman, Roberts, Perryman & Bomkamp, St. Louis, Mo., for Northeastern Pharm.

Russell Bliss, St. James, Mo., pro se.

ORDER AND MEMORANDUM

NANGLE, District Judge.

IT IS HEREBY ORDERED that the motion by the cities of Eureka, Missouri, and Fenton, Missouri, to intervene and file a complaint be and is denied.

The cities of Eureka and Fenton ("the Cities") seek to intervene and file a complaint against various defendants named in the instant consolidated actions.[1] The

---

1. The Cities stress that they seek to intervene and file a complaint concerning only the Times Beach and Minker/Stout/Romaine Creek sites. This consolidated litigation involves a total of 28

Cities' interest in intervention stems from their concern about the use of nearby Times Beach as a locus for dioxin clean-up activities related to these consolidated cases. The Syntex defendants and the United States have filed memoranda in opposition to the intervention. Upon careful consideration of the various memoranda and the applicable law, the Court denies the Cities leave to intervene and file their complaint.

■ Intervention as of right in a CERCLA [2] action such as this, by entities other than the United States and individual states, is governed by 42 U.S.C. § 9613(i),[3] and is also subject to the general provisions of Fed.R.Civ.P. 24.[4] The four requirements for intervention as of right, which are found in these authorities and are generally recognized, are that the would-be intervenor:

(1) make a timely application for intervention,

(2) have an interest in the subject of the action,

(3) be so situated that without intervention, the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect his interest, and

(4) have an interest not adequately protected by the existing parties.

---

sites, of which those are only two. Nonetheless, the consolidation represents the unified approach taken by the Court in dealing with this litigation, and the impact of the Cities' intervention would, as a practical matter, be felt throughout the consolidated cases.

2. Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.*

3. That provision reads in pertinent part:
In any action commenced under this chapter or under the solid Waste Disposal Act … in a court of the United States, any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties.

*See, e.g., New Orleans Public Service v. United Gas Pipe Line,* 732 F.2d 452 (5th Cir.1984); *Fritts v. Niehouse,* 604 F.Supp. 823 (W.D.Mo.1984).

■ The timeliness of the motion to intervene is a threshold consideration. *Arkansas Electric Energy Consumers v. Middle South Energy, Inc.,* 772 F.2d 401 (8th Cir.1985). Furthermore,

The decision as to timeliness is committed to the district court's discretion … Although the issue is determined from all the circumstances … three factors receive particular attention: "how far the proceedings have gone when the movant seeks to intervene, prejudice which resultant delay might cause to other parties, and the reason for the delay."

*Id.* at 403 (citations omitted). In *Arkansas Electric,* the Eighth Circuit found a petition for intervention filed twelve days after the complaint was untimely enough, in the circumstances, to support denial of intervention. *Id.* In the instant case, the Cities seek to intervene in a matter now six years old,[5] which, insofar as it concerns the defendants against whom the Cities desire to plead, appears to be close to resolution. This imminent resolution takes the form of two consent decrees, recently lodged with the Court, which are the product of lengthy, sensitive and complex negotiations between the parties based on careful study by the Environmental Protection Agency

---

4. Rule 24(a) provides:
Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

5. The oldest of these consolidated cases was filed in 1984. Although the complaints concerning Times Beach and the Minker/Stout/Romaine Creek site were not filed until March, 1989, the Cities admit their interest and involvement in "pursuing a reasonable solution to the dioxin problem at Times Beach" since 1983. Cities' Reply Memorandum, p. 2.

("EPA") and the Missouri Department of Natural Resources ("DNR"). To the extent intervention poses a threat of disruption to the consent decree process, which has been carefully monitored by the Court throughout negotiations, the untimeliness of the Cities' motion threatens significant prejudice to the existing parties. Such a threat to a negotiated consent decree has proved important in several Courts of Appeals decisions upholding the denial of belated intervention. *See, e.g., Bloomington, Indiana v. Westinghouse Electric Corp.,* 824 F.2d 531, 536 (7th Cir.1987) [consolidated environmental cases]; *Jones v. Caddo Parish School Board,* 735 F.2d 923 (5th Cir.1984); *Aleut Corporation v. Tyonek Native Corporation,* 725 F.2d 527 (9th Cir. 1984).

In light of the lengthy pendency of these cases and their high media profile, the Cities cannot reasonably claim not to have been aware of the pendency or significance of the consolidated cases during recent years. Opportunities for public participation have been numerous. The EPA's two-year-old Record of Decision ("ROD") concerning the relevant sites, upon which the consent decrees will be based in part, was signed almost two years ago; a lengthy public comment period preceded its signing. The EPA has released other documents concerning the clean-up effort,[6] and has held public meetings in connection with each,[7] which were open to and attended by residents of the Cities. Moreover, the Director of the DNR once discussed intervention with the Cities' counsel, who advised that the Cities were not interested in intervention.[8] The Cities' own statement of the facts, contained in its reply memorandum, demonstrates that the Cities have long been aware of the dioxin problem and this litigation, and have participated in various aspects of the state and federal processes addressing both.

For the foregoing reasons, the Cities' motion to intervene in this litigation at this extremely advanced stage is untimely. The Cities proffered justification for the delayed effort to intervene in the case is that the Cities only recently became concerned that the state and federal governments did not adequately represent the Cities' interest in this litigation. Because the Court rejects the contention that the governments do not adequately represent the Cities' interests, as discussed below, the Court finds this an inadequate excuse for the lateness of the attempt to intervene.

The Court is persuaded that intervention is not necessary to adequately protect the Cities' interests in the dioxin cleanup. The Cities are understandably concerned that they have input in the Court's consideration of the proposed consent decrees. The Cities need not, however, achieve party status in order to have their input considered. The proposed consent decrees having been lodged with the Court, they will be published, and the Cities, along with any other interested persons and entities so inclined, will be able to submit written comments on the proposal to the Department of Justice, which must then file the comments with the Court. *See* 42 U.S.C. § 9622. As it did with the ROD, the United States intends to file with the Court a "responsiveness summary" prepared by the EPA addressing significant comments received on the proposed consent decrees.

■ Furthermore, the State of Missouri and the United States, as governmental entities acting in the public interest, are both presumed to adequately represent the interests which the Cities assert. Particularly where, as here, the would-be inter-

---

6. These documents are entitled "Feasibility Study of Final Remedial Actions for the Minker/Stout/Romaine Creek Site" (July 1986), "Times Beach Feasibility Study" (December 1986), and "Final Management of Dioxin–Contaminated Soil and Final Disposition of Structures and Debris at Times Beach, Missouri and the Minker/Stout/Romaine Creek Site, Missouri" (February 1988).

7. The meetings were held August 25, 1986, February 12, 1987, and March 10, 1988.

8. *See* G. Tracy Mehan letter dated 11/29/89 to Jerome Wallach and Robert Adler, Attachment A to the Syntex defendants' memorandum in opposition, and Wallach letter dated 12/1/89 to Mehan, Attachment B to the Syntex defendants' memorandum.

venors' complaint is patterned after the complaint of an existing plaintiff, in this case the United States,

> the party seeking intervention has the same ultimate objective as a party to the suit, [and] a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion or nonfeasance.

*Commonwealth of Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214, 216 (4th Cir.1976). Albeit in the antitrust context, the Eighth Circuit has reiterated a similar intervention standard announced by the Supreme Court: " '[B]ad faith or malfeasance on the part of the Government' in negotiating and accepting a consent decree must be shown before intervention will be allowed." *United States v. Associated Milk Producers*, 534 F.2d 113, 117 (8th Cir.1976), quoting *Sam Fox Publishing Co. v. United States*, 366 U.S. 683, 689, 81 S.Ct. 1309, 1313, 6 L.Ed.2d 604 (1961). In an enforcement action where the government sues as *parens patriae*, the Courts of Appeal are agreed that "it is proper to require a strong showing of inadequate representation before permitting intervenors to disrupt the government's exclusive control over the course of its litigation." *United States v. Hooker Chemicals & Plastics*, 749 F.2d 968, 987 (2nd Cir. 1984). The Cities have not, in the Court's judgment, demonstrated the existence of any factors rebutting the strong presumption that Missouri and the United States adequately represent the Cities' interests.

Furthermore, the proposed consent decrees appear to address at least two of the Cities' major concerns, yet another indication that Missouri and/or the United States is adequately representing the Cities' interests. First, the Cities feared a remedial plan following the ROD's requirement that the level of dioxin at Times Beach be reduced to only 20 ppb. *See* Cities' Reply Memorandum, p. 7. As the EPA's "Explanation of Significant Differences [Between the ROD and the Proposed Consent De-

crees]" ("ESD")[9] explains, the proposed consent decrees provide that the "action level" at Times Beach be lowered from that of the ROD to 5–10 ppb and that a one-foot soil cover be placed over any areas with dioxin levels above 1 ppb:

> During settlement negotiations subsequent to issuance of the ROD, it was agreed that soils exceeding 5–10 ppb at Times Beach will be excavated and thermally treated, consistent with prior correspondence with CDC/ATSDR and the Missouri Department of Health indicating that the 5–10 ppb cleanup level under one foot of clean fill is equivalent to a 1 ppb cleanup level.

ESD, p. 3.

Secondly, the Cities have been greatly concerned by the prospect of a permanent incinerator being placed at Times Beach. The proposed consent decrees provide for only "temporary placement of a thermal treatment unit at Times Beach" to incinerate materials from specified sites, and further provides that "[a]t the conclusion of the incineration stage, the thermal treatment unit will be decontaiminated and removed and the Times Beach Site will be restored consistent with the ROD." Proposed Consent Decree involving Syntex defendants, p. 4.

In consideration of (1) the Cities' delay in seeking to intervene and the inadequate justification therefor, (2) the prolonged public awareness of both this litigation and its potential impact on the Cities' interests, (c) the numerous opportunities for the Cities' participation throughout the course of these proceedings, (d) the potential prejudice to the existing parties and their carefully negotiated and imminent resolution of a large part of the litigation, and (e) the State of Missouri's and the United States' adequate representation of the public interest, the Court denies the Cities' belated motion to intervene.

---

9. This document was lodged with the Court along with the proposed consent decree involving the Syntex defendants, and is part of the Administrative Record file, which is available for public review at the EPA Public Information Center located near Times Beach.