**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**PITNEY BOWES, INC., Defendant,**

**EDO Corporation; Plessey, Inc.;
Vernitron Corp., Defendants–
Appellees,**

**BAII Banking Corp., Movant–Appellant.**

**No. 211, Docket 92–6300.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 2, 1993.

Decided Jan. 26, 1994.

Howard B. Epstein, New York City (Lawrence P. Schnapf, Theodore A. Keyes, Lord Day & Lord Barrett Smith, of counsel), for appellant BAII Banking Corp.

Donald W. Stever, New York City (Dewey Ballantine, of counsel), for defendants-appellees EDO Corporation, Plessey, Inc., and Vernitron Corp.

Peter A. Appel, Appellate Section, Environment & Natural Resources Div., Dept. of Justice, Washington, DC (Brian Rohan, Asst. Regional Counsel EPA Region I, Boston, MA, Myles E. Flint, Acting Asst. Atty. Gen., Albert S. Dabrowski, U.S. Atty., Sharon E.

Jaffe, Asst. U.S. Atty., New Haven, CT, John A. Bryson, Cynthia S. Huber, Dept. of Justice, Washington, DC, of counsel), for appellee U.S.

Before: FEINBERG, CARDAMONE and ALTIMARI, Circuit Judges.

CARDAMONE, Circuit Judge:

The appellant, a bank holding company, holds a mortgage on property located within a Superfund site. It moved to intervene in a suit brought by the United States to recover cleanup costs against the named defendants as lessees of property within the site area. The motion to intervene came after the named defendants had settled with the United States Environmental Protection Agency (EPA). The bank claimed to be innocent of this knowledge. Its insistence that it had actual knowledge of nothing makes it appear as though it was determined not to know anything.

Banque Arabe et Internationale D'Investissement (BAII or appellant) appeals from a November 16, 1992 judgment of the United States District Court for the District of Connecticut (Cabranes, J.), which denied its motion to intervene, and entered a consent decree between the United States and EDO Corporation, Plessey, Inc., Vernitron Corp. and Pitney Bowes, Inc. (collectively settling defendants). BAII contends that it should have been allowed to intervene as of right under Fed.R.Civ.P. 24(a)(2) or § 113(i) of the Comprehensive Environmental Response, Conservation and Liability Act (CERCLA), 42 U.S.C. § 9613(i) (1988). In the alternative, it asserts the district court should have granted it permissive intervention under Fed.R.Civ.P. 24(b), or joined BAII as a necessary party under Fed.R.Civ.P. 19(a).

## BACKGROUND

The underlying litigation, as indicated, involves the environmental cleanup of a Superfund site known as the Kellogg–Deering Well Field Site in Norwalk, Connecticut (Site). In 1984 the EPA added the Site to the National Priority List. 49 Fed.Reg. 37,070 (1984). As of June 1992, it was ranked number 497. 40 C.F.R. pt. 300, app. B (1992).

Settling defendants leased buildings located within the Site for various lengths of time for the 16 years between 1969 and 1985. In 1986 Elinco Associates (Elinco) purchased property located within the Site, financing its purchase with a $6.9 million loan secured by a mortgage on the property from appellant BAII, a subsidiary of Banque Nationale de Paris. At the time of the loan the EPA had issued a Record of Decision, requiring construction of an air stripping unit, for a portion of the Site. BAII was aware that a "Remedial Investigation/Feasibility Study" was to be performed on the property Elinco was purchasing. The bank therefore required as a condition of the loan that Elinco establish a $1 million escrow fund to cover the construction cost of a wellhead treatment system.

In May 1990 the United States issued to Elinco and other potentially responsible parties a "special notice" pursuant to § 122(e) of CERCLA, 42 U.S.C. § 9622(e), advising that it sought to recover costs the government had or would incur in response to the release or threatened release of hazardous substances at the Site pursuant to §§ 106 and 107 of CERCLA, 42 U.S.C. §§ 9606, 9607. Elinco and the other potentially responsible parties were invited to participate in settlement discussions with the government, but Elinco chose not to participate. On February 12, 1991 the EPA filed a complaint and lodged the proposed consent decree against the settling defendants with the district court in Connecticut.

On February 26, 1991, pursuant to § 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), the government published notice of the proposed consent decree in the Federal Register. 56 Fed.Reg. 7878 (1991). The notice announced the consent decree had been lodged with the district court and that for the next 30 days the U.S. Justice Department would accept comments. It stated the "proposed Consent Decree concerns the response to the existence of hazardous substances at the Kellogg Deering Well Field Site located in Norwalk, Connecticut," and described how interested persons could obtain a copy of the decree. *Id.*

The terms of the consent decree require the settling defendants to conduct remedial work on the Site and to reimburse the United States for most of the response costs it had incurred before settlement. The remedial work contemplated under the decree includes implementing institutional controls, which are defined as "the land use and deed restrictions and other regulations and controls developed pursuant to this Consent Decree and the Statement of Work to restrict soil excavation in areas of soil contamination at the Complex and restrictions on well installations and use in areas of groundwater contamination...." The decree specifically calls for the settling defendants to "record a certified copy of [the] Consent Decree with the Recorder's Office ... with respect to each property that is part of the Complex." It also requires settling defendants to use their "best efforts" to secure access and implement the necessary institutional controls on affected property not owned or controlled by settling defendants.

BAII declares it did not actually learn of the proposed consent decree until September 6, 1991 when Elinco brought it to BAII's attention. Because the comment period had already ended, BAII successfully moved in district court in a letter dated October 1, 1991 to be permitted to submit comments challenging the fairness of the decree. On April 2, 1992 the government responded to BAII's comments and simultaneously filed a motion in the district court to have the consent decree approved.

BAII moved to intervene as of right on May 13, 1992 in order to challenge the fairness of the contemplated institutional controls. At that time BAII was the mortgagee of Elinco's property located within the Site. Because Connecticut is a "title theory" state, BAII was also titleholder of the property. Elinco was in default on its mortgage and BAII was preparing to foreclose on the subject property. Foreclosure proceedings were instituted against Elinco in July 1992 in the Connecticut Superior Court. The district court denied BAII's motion and entered the consent decree in the November 16, 1992 judgment from which BAII appeals. We affirm.

## DISCUSSION

Intervention is a procedural device that attempts to accommodate two competing policies: efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand. *See United States v. Texas E. Transmission Corp.*, 923 F.2d 410, 412 (5th Cir. 1991). In resolving the tension that exists between these dual concerns, the particular facts of each case are important, and prior decisions are not always reliable guides. Because of the variety of factual circumstances that face a district court called upon to decide whether to grant or deny a motion to intervene, and the close proximity of that court to the case's nuances, it has the advantage of having a better "sense" of the case than we do on appeal. For that reason intervention decisions are reviewed under an abuse of discretion standard. *See United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 990–91 (2d Cir.1984). With these general considerations in mind, we turn to the specific rules for intervention.

### I Intervention as a Matter of Right

Federal Rule of Civil Procedure 24(a)(2) provides:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Section 113(i) of CERCLA sets forth the conditions for intervention in CERCLA proceedings:

In any action commenced under this chapter ... any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical mat-

ter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties.

42 U.S.C. § 9613(i). The conditions for intervention under § 113(i) are "virtually identical" to those necessary for intervention under Rule 24(a)(2). *Travelers Indem. Co. v. Dingwell,* 884 F.2d 629, 641 (1st Cir.1989). The provisions differ only with respect to who bears the burden of proof of showing that the applicant's interest is or is not adequately represented. *See Arizona v. Motorola, Inc.,* 139 F.R.D. 141, 144 (D.Ariz.1991). Under Rule 24(a)(2) the purported intervenor must show that its interest is not adequately represented, while under CERCLA § 113(i), the government bears that burden. We discuss BAII's application for intervention under both provisions, using the familiar test of Rule 24(a)(2).

■ Intervention as of right under Rule 24(a)(2) is granted when an applicant: (1) files a timely motion; (2) asserts an interest relating to the property or transaction that is the subject of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) has an interest not adequately represented by the other parties. *See, e.g., United States v. New York,* 820 F.2d 554, 556 (2d Cir.1987); *Restor–A–Dent Dental Lab., Inc. v. Certified Alloy Prods., Inc.,* 725 F.2d 871, 874 (2d Cir.1984). The intervention application will be denied unless all four requirements are met.

■ BAII stumbles over the first hurdle, that is, it fails to show it made a timely motion. While the district court denied intervention primarily based on the second requirement—no showing of a sufficient interest relating to the property—it also found BAII's motion was not timely. Because timeliness was contested in the trial court and briefed on this appeal, we may affirm on this ground, without reaching the ground relied upon by the district court, since a prevailing party in the district court may assert any ground to support its favorable judgment, regardless of whether the trial court relied upon it or not. *See Dandridge v. Williams,* 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970); *Viacom Int'l Inc. v. Icahn,* 946 F.2d 998, 1000 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1244, 117 L.Ed.2d 477 (1992). Because we decline to reach the issue of whether BAII's interest in the property was sufficient for it to intervene, EDO Corporation's pending lawsuit against BAII is not relevant to our analysis, and BAII's motion that we take judicial notice of that related proceeding is denied as moot.

■ We turn to the timeliness issue. Whether a motion to intervene is timely is determined within the sound discretion of the trial court from all the circumstances. *See NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973). Timeliness defies precise definition, although it certainly is not confined strictly to chronology. Among the circumstances generally considered are: (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness. *See United States v. New York,* 820 F.2d at 557. We analyze these factors in order.

### A. Notice

■ BAII knew or should have known about the settlement negotiations between the EPA and potentially responsible parties as early as May 1990, when Elinco was invited to participate in the discussions. BAII insists that it as well as Elinco should have been advised by the EPA of the settlement negotiations. But the EPA believed BAII to be exempt from liability under the lender liability rules, 42 U.S.C. § 9601(20)(A). Hence, since BAII was not considered a potentially responsible party, the EPA was not required to give it notice of the negotiations. *See* 42 U.S.C. § 9622(e) (requiring that all potentially responsible parties be provided with notice of negotiations).

The EPA is not responsible for advising holders of security interests in property lo-

cated on Superfund sites of settlement negotiations that might affect the value of their collateral. Such parties are responsible for monitoring their collateral themselves, and it may reasonably be assumed that a lender of nearly seven million dollars will keep in contact with its debtor to protect its interest in the loan. Had BAII kept in touch with Elinco, it could have asserted its interest in the action before the potentially responsible parties had come to an agreement with the EPA regarding the details of the property cleanup.

In any event, passing that May 1990 point, BAII should have been alerted to its potential interest in the action brought by the United States against the settling defendants, when the United States gave public notice of the litigation and proposed consent decree in the Federal Register, on February 26, 1991. Notice published in the Federal Register charges all interested parties with notice of proposed action by the United States. *See Government of Guam v. United States,* 744 F.2d 699, 701 (9th Cir.1984); *see also Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947) ("appearance of rules and regulations in the Federal Register gives legal notice of their contents").

Further, BAII admits that as far back as 1986 when it made its loan to Elinco it was aware contamination had been found on the property and that some part of it had been subject to an EPA cleanup effort. Given that any further ordered cleanup may have affected the marketability of this parcel, BAII, as a sophisticated international bank, should have been closely monitoring EPA actions with respect to the Superfund site encompassing its collateral. But BAII did not make its motion to intervene in the litigation until May 1992, 15 months after the February 1991 public notice of the action was placed in the Federal Register.

BAII maintains, in response, that it did not have actual knowledge of the lodging of the consent decree until September 6, 1991, and that in less than a month it submitted comments to the district court setting forth its opposition to the decree. Significantly, for purposes of analysis of the timeliness issue, BAII waited another seven months before moving to intervene. This delay is explained, BAII says, because it was waiting for a response from the EPA to its comments, hoping the EPA would alter the consent decree in light of BAII's suggestions. BAII does not tell us why it failed to move for intervention in the interim—perhaps even as an anchor to windward—to guard against the possibility that its hope for a change in the consent decree might be dashed. If BAII's interest was, as it now asserts, more than that of any other member of the public, it should have made its application to intervene as soon as it became aware of its interest, rather than relying on the process of public comment alone to protect that interest.

In sum, the evidence before the district court revealed that BAII had constructive knowledge of its interest in the underlying action for at least 15 months, and actual knowledge for eight months before filing its motion to intervene. Although parties have been permitted to intervene when the lapse of time between notice of the suit and the application for intervention has been much longer than this, *see, e.g., Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,* 782 F.Supp. 870 (S.D.N.Y.1991) (application timely when filed almost two years after notice of interest in case, because filed shortly after interest became direct), parties have also been denied intervention when the lapse of time has been the same or less than in the case at hand, *see, e.g., NAACP,* 413 U.S. at 366–69, 93 S.Ct. at 2603–04 (application untimely when filed four months after suit commenced); *City of Bloomington v. Westinghouse Elec. Corp.,* 824 F.2d 531, 535 (7th Cir.1987) (application untimely when filed more than 11 months after notice of interest in case). This apparent discrepancy in rulings doubtless is due to the fact that the time lapsed between notice of an interest in pending litigation and an application to intervene is only one of several factors a district court must weigh when deciding the issue of timeliness. *See United States v. New York,* 820 F.2d at 557. We now analyze those other factors.

### B. Prejudice to Existing Parties

The extent of prejudice to the original litigating parties from the applicant's delay is the next factor reviewed. The district court found that permitting intervention would result in prejudice to existing parties because the court would have been unavoidably obliged to delay entry of the consent decree, which would have resulted in a postponed cleanup effort at the Site. BAII's intervention would also have required a reopening and a renegotiation of the consent decree, thereby wasting the fruits of lengthy negotiations that had culminated in agreement.

The Rule 24(a)(2) intervention of right requirements must be examined in the context of the statutory scheme under which the underlying litigation is being pursued. Here that action is one for recovery of costs under §§ 106 and 107 of CERCLA. Particular focus must be had on the posture of that litigation at the time the motion to intervene is made. *See Hooker Chems. & Plastics Corp.,* 749 F.2d at 983. Such an examination reveals that the EPA has been investigating and responding to conditions at the Site since 1984. The settling defendants participated in the development of a response for the release or threatened release of hazardous substances. The agreed upon response was one that the EPA had devoted substantial time and money to design. EDO Corporation, one of the settling defendants, has already commenced remedial work under the consent decree, retained a contractor for sampling work, and taken steps to gain access to properties owned by third parties to further the remedial work. In addition, EDO has a contract with an environmental engineering firm to perform design work and counsel it on the technical aspects of the consent decree remedy. This work is being conducted under numerous deadlines, which if not met to the EPA's satisfaction will result in *per diem* penalties being imposed.

One of the goals of CERCLA, as expressed in the provisions for settlements with potentially responsible parties, is to "expedite effective remedial actions and minimize litigation." 42 U.S.C. § 9622(a); *see also* H.R.Rep. No. 99–253(I), 99th Cong., 2d Sess. 100 (1986), *reprinted in,* 1986 U.S.C.C.A.N. 2835, 2882 (explaining that purpose of encouraging settlement is to "accelerate the rate of cleanup and reduce its expense"). Allowing a party to intervene after CERCLA settlement negotiations have been completed, agreement reached, and some work undertaken would contravene this purpose, prejudicing the public and the original litigating parties. *See United States v. Mid–State Disposal, Inc.,* 131 F.R.D. 573, 576 (W.D.Wis. 1990). Consequently, permitting BAII to intervene after the settling defendants had already agreed that cleanup procedures would be undertaken as soon as the consent decree was entered would have caused prejudice by halting the cleanup efforts.

Moreover, the government and the settling defendants would have been prejudiced had BAII been permitted to intervene at such a late stage in the litigation since they would have had to begin negotiations again from scratch. We have observed that jeopardizing a settlement agreement causes prejudice to the existing parties to a lawsuit. *See Farmland Dairies v. Commissioner of New York State Dep't of Agric. & Mkts.,* 847 F.2d 1038, 1044 (2d Cir.1988). Other courts have ruled that there would be substantial prejudice to existing parties in CERCLA proceedings were intervention permitted after agreement had been reached on a consent decree. *See City of Bloomington,* 824 F.2d at 535; *United States v. BASF–Inmont Corp.,* 819 F.Supp. 601, 607 (E.D.Mich.1993); *Mid–State Disposal,* 131 F.R.D. at 576; *United States v. Bliss,* 132 F.R.D. 58, 59–60 (E.D.Mo.1990).

The record reveals that the government and the settling defendants negotiated the terms of the consent decree for approximately eight months before reaching a final agreement. BAII did not attempt to intervene at any time during these negotiations and, in fact, waited until 15 months after the proposed consent decree had been lodged with the district court, and the period for public comment had expired, before making its motion. Hence, we agree with the district court that permitting BAII to intervene would have been prejudicial both to the government and the settling defendants.

## C. Prejudice to BAII

The extent of prejudice BAII faces upon denial of intervention does not tip the balance in its favor. BAII declares it will be prejudiced without intervention because the institutional controls called for in the consent decree—and agreed to by the government and the settling defendants—will encumber BAII's collateral by impeding the future development and marketability of the Elinco property. While acknowledging that BAII would have been better able to protect its security interest had it been permitted to intervene, we are unable to see any immediate affect on the value of BAII's collateral so significant as to warrant reversal of the denial of its motion. Recording the consent decree on the deed to Elinco's property will not cause any substantial decrease in the value of the property. Any potential purchaser of property located in a Superfund site surely would investigate EPA actions with respect to it and discover the existence of the consent decree, even if it were not recorded on the deed.

Further, when appellant applied for intervention it was a mortgagee and bare titleholder to Elinco's property, with no possessory interests in the land the settling defendants are required to clean up. Thus, any restrictions on the use of the property while the cleanup is proceeding will only affect BAII indirectly. Should BAII complete its pending foreclosure proceeding and obtain possession of the property, it may then challenge under § 113(h)(5) of CERCLA, 42 U.S.C. 9613(h)(5), any institutional controls the EPA may seek to impose against it.

Moreover, BAII seeks to intervene only for the purpose of challenging the fairness of the remedial actions to be undertaken pursuant to the consent decree; no additional claims are asserted. It had an opportunity to express its concerns about the fairness of the consent decree during the public comment period, and availed itself of that opportunity by submitting written comments to the district court. Because that court presumably considered BAII's suggestions when it decided to enter the consent decree, it is hard to fathom how BAII would suffer undue prejudice by being denied an opportunity to present the same views to the district court again. *Accord City of Bloomington*, 824 F.2d at 537.

## D. Unusual Circumstances

BAII presents no unusual circumstances justifying its delay in filing for intervention. In contrast, the stated policy that favors rapid settlement and implementation of CERCLA remedies militates against permitting intervention in the instant case. BAII's application for intervention was untimely in light of all the circumstances and there was no abuse of discretion in denying its motion to intervene as of right.

## II Permissive Intervention & Joinder of Necessary Parties

■■■ Permissive intervention is governed by Rule 24(b) of the Federal Rules of Civil Procedure, which states in relevant part:

> Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

BAII maintains it should have been permitted to intervene because it seeks to raise the same factual issue decided by the district court—the fairness of the consent decree.

Reversal of a district court's denial of permissive intervention is a very rare bird indeed, so seldom seen as to be considered unique. *See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 (5th Cir.), *cert. denied*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984); *United States Postal Service v. Brennan*, 579 F.2d 188, 192 (2d Cir.1978) (noting failure to find a single case where denial of permissive intervention was reversed solely as an abuse of discretion). The principal guide in deciding whether to grant permissive intervention is "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R.Civ.P. 24(b)(2).

As our previous discussion demonstrates, given that the parties to the action had already agreed to the terms of the consent decree, and that intervention would require renegotiation, and delay the cleanup efforts,

it was not an abuse of discretion for the district court to deny permissive intervention. Moreover, a threshold consideration under Rule 24(b), as under Rule 24(a), is timeliness. *NAACP*, 413 U.S. at 365, 93 S.Ct. at 2602. The district court's finding that BAII's application was untimely for purposes of intervention as of right applies as well to permissive intervention. Nor was BAII a party necessary for a just adjudication of the action, as the trial court correctly pointed out. It therefore was not required to be joined under Fed.R.Civ.P. 19(a).

## CONCLUSION

For the reasons stated, the judgment of the district court is affirmed.