**Glenn HERDMAN, Allegany Environmental Systems, Inc., and Hyland Facility Associates, Plaintiffs,**

**v.**

**TOWN OF ANGELICA, Defendant.**

**No. 95–CV–0291C(H).**

United States District Court,
W.D. New York.

Aug. 23, 1995.

LeBoeuf, Lamb, Greene & MacRae (Thomas S. West, of counsel), Albany, NY, for plaintiffs.

Harter, Secrest & Emery (A. Paul Britton, of counsel), Rochester, NY, for defendant.

State University of New York at Buffalo School of Law, Legal Assistance Program (R. Nils Olsen, of counsel), Buffalo, NY, for Proposed intervenor-defendant Concerned Citizens of Allegany County.

## DECISION and ORDER

CURTIN, District Judge.

Concerned Citizens of Allegany County ("CCAC") has moved to intervene as a defendant in this action as of right under Fed. R.Civ.P. 24(a)(2), or alternatively as a matter of discretion under Fed.R.Civ.P. 24(b)(2). Items 23–26. The motion is supported by the defendant Town of Angelica ("the Town"), and is opposed by the plaintiffs, Glenn Herdman, Allegany Environmental Systems, Inc., and Hyland Facility Associates (referred to collectively as "Hyland"). Items 28–30. Oral argument was held on July 20, 1995. The motion raises significant questions concerning the rights of citizens and public interest groups to intervene in actions challenging the constitutional validity of local ordinances regulating private property use and commercial activity.

### BACKGROUND

This action concerns Hyland's proposal to build and operate a commercial solid waste ash monofill on just under 300 acres of pri-

vate land in the Town of Angelica, in Allegany County, New York. The pertinent facts are for the most part undisputed. Since 1987, Hyland has been involved in an effort to design and obtain permits for the construction and operation of the project. It filed a permit application with the New York State Department of Environmental Conservation ("DEC") in June, 1988. After a long, drawn-out administrative process, DEC Commissioner Michael D. Zagata issued a final decision on April 13, 1995, finding that the requirements of New York State Environmental Conservation Law and the pertinent regulations had been met, and directing DEC staff to issue the necessary permits. Permits were issued on May 3, 1995. Hyland is now ready to construct the facility. Standing in its way, however, is a local law restricting the establishment of new solid waste facilities within the Town of Angelica.

The Town has opposed the Hyland monofill from the start. On September 12, 1988, in direct response to Hyland's expressed intention of proceeding with the project and its filing of the June 1988 DEC permit application, the Town Board enacted Local Law No. 1 of 1988 ("Local Law No. 1"), entitled "Solid Waste Disposal Law of the Town of Angelica." Item 26, ¶ 12 and Ex. G. The law was intended to "restrict the operation of solid waste management facilities within the Town in order to preserve and promote a clean, wholesome, and attractive environment for the community." *Id.*, Ex. G, § II(B)(1). It provided that, with certain exceptions, "[n]o solid waste management facility (landfill, ashfill, solid waste incinerator, etc.) shall hereafter be permitted to commence operation or to continue operation within the Town of Angelica." *Id.*, § V(B).

Hyland moved ahead with its DEC permit application, apparently believing that Local Law No. 1 was unenforceable because it had been enacted illegally and violated the Commerce Clause and other constitutional provisions. In response, on July 30, 1990, the Town filed an action in State Supreme Court in Allegany County, seeking a declaratory judgment that Local Law No. 1 was valid and enforceable in all respects. Hyland moved to dismiss on the grounds that the

controversy was not ripe for adjudication, since the company might never obtain a DEC permit, and it might choose not to proceed with development of the project even if it did. On November 14, 1990, the court issued a decision staying the action until such time as a permit had been granted by the DEC and the Town had exhausted all administrative remedies.

On April 14, 1995, the day after DEC Commissioner Zagata issued his decision approving Hyland's permit application, Hyland filed the present action, seeking (1) a declaratory judgment that Local Law No. 1 is unconstitutional under the Commerce Clause, and under the Equal Protection and Due Process Clauses of the Fourteenth Amendment; (2) a declaratory judgment that Local Law No. 1 is inconsistent with and preempted by the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6901 *et seq.*, and New York Environmental Conservation Law, Article 27, Title 7; (3) preliminary and permanent injunctions restraining the Town from enforcing Local Law No. 1; and (4) direct, consequential, and punitive damages. Item 1. Accompanying the complaint was an application for a preliminary and permanent injunction, based upon the alleged Commerce Clause violation, and for an accelerated hearing on the merits pursuant to Fed.R.Civ.P. 65(a)(2). Items 2–5.

One week later, on April 21, 1995, the Town filed a motion in State Supreme Court seeking an order vacating the stay on its action for declaratory relief, on the grounds that the action was now ripe for adjudication. Hyland cross-moved to dismiss for lack of subject matter jurisdiction, or alternatively for an order dismissing or staying the action during the pendency of Hyland's action in this court. Oral argument was heard on May 22, 1995, but no decision has yet been issued. Meanwhile, on April 25, 1995, the Town filed a motion to dismiss Hyland's action in this court, on the grounds that the court should refrain from considering Hyland's claims under the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Items 9, 10.

CCAC filed its motion to intervene in this case on June 27, 1995. Item 23. CCAC is a nonprofit association formally organized under the laws of New York State. Item 26, ¶ 17. Its organizational purposes include "promoting and improving the quality of the natural environment of Allegany County, New York through public and community education, direct action, and opposition to the construction and operation of hazardous, solid and nuclear waste facilities within the County." *Id.* It was formed in April 1988, in response to Hyland's proposal to construct and operate an ash monofill in the Town of Angelica. *Id.*, ¶ 18. It has a membership of several hundred individuals, most of whom work or own property within Allegany County. *Id.*, ¶ 19. Many of the individuals reside in the Town of Angelica, own property there, and send their children to the Town of Angelica Central School. *Id.* CCAC members and their families would or could be exposed to increased health and safety risks if Hyland's ash monofill were to be constructed and operated in the Town of Angelica. *Id.*, ¶ 20.

CCAC and its members encouraged the Town to draft and adopt Local Law No. 1. Item 26, ¶ 22. CCAC also participated as a party intervenor in the DEC administrative process considering Hyland's application for construction and operation permits. *Id.*, ¶¶ 25–28. On August 11, 1995, joined by the Town, the Village of Angelica, and Angelica Booster Citizens, Inc., it filed an Article 78 proceeding in the New York State Supreme Court, County of Erie, seeking review of the April 13, 1995, decision of DEC Commissioner Michael D. Zagata. *Id.*, ¶ 29; Items 124, 125.

CCAC asserts that it has at least three separate and distinct interests in the subject matter of this case. Item 26, ¶¶ 30–33. First, it argues that because of their residence within the Town of Angelica and its environs, many individual members of CCAC "have personal interest in the purity and integrity of the local air and water resources, in the continued rural and residential character of the Town, and in the maintenance of their property values." *Id.*, ¶ 31. CCAC and its individual members believe that these

interests are threatened by the proposed project. Local Law No. 1 serves as a barrier to the development of the project. Therefore, support of the validity of Local Law No. 1 is of paramount interest to the organization. *Id.*

Second, CCAC maintains that in view of its filing of an Article 78 proceeding challenging the DEC Commissioner's April 13, 1995, permit decision, it has "a material and significant interest in ensuring that this Court is fully appraised of the continuing, non-final status of the DEC administrative process and is given the opportunity to closely consider the equitable and prudential limits on its authority to proceed herein during the course of a comprehensive regulatory process which may render decision of the numerous federal constitutional claims of Plaintiffs unnecessary." Item 26, ¶ 32; *see also* Items 120, 124, 125.

Third, CCAC claims that it has an interest "in ensuring the continued viability of the broad legislative authority [to enact local laws regulating land use] unambiguously provided New York towns" by various provisions of the New York Environmental Conservation, Town, and Municipal Home Rule Laws. Item 26, ¶ 33. CCAC attempts to further its goals by persuading municipalities throughout Allegany County to use this legislative authority to ban the construction and operation of solid waste facilities. Hyland's constitutional challenge to Local Law No. 1, it claims, places all such regulation at risk. *Id.*

CCAC argues that its interests may not be adequately protected by the Town in this action. Item 26, ¶¶ 34–41. The Town, it asserts, is a rural, residential community with a very limited tax base, and it may come under increasing pressure to settle the action and permit Hyland to proceed with its project solely because of continuing litigation costs. The participation of CCAC as an intervenor will permit a sharing of the financial burden of defending the validity of Local Law No. 1, enhancing the Town's ability to continue to protect its legislative authority. *Id.*

In opposing papers filed on July 11, 1995, Hyland questioned the accuracy of the statements in CCAC's moving papers concerning

the nature of CCAC's membership and interests in the subject matter of this case. Item 30, ¶ 3. It pointed out that CCAC had provided no documentation establishing the extent of its membership or the proximity of the members to Hyland's proposed monofill. *Id.* At oral argument on July 20, 1995, the court asked CCAC to submit affidavits addressing these issues. In response, CCAC has filed 76 affidavits of members of the organization, the majority of whom state that they live within one-half to two miles of the proposed monofill. Items 36–111.[1] Included is the affidavit of A. Thomas Barber, Co–Chairman of CCAC, stating that the organization has a current membership of more than six hundred, at least one hundred of whom are residents of the Town of Angelica. Item 93, ¶¶ 1, 4–5. The affidavits establish that CCAC represents a sizeable number of individuals who live near the proposed monofill, and who are concerned that the construction and operation of the facility will have an adverse impact both on the local environment and on their property values.

Hyland argues (1) that the interests asserted by CCAC in this litigation are "not the sort of direct, substantial and legally cognizable interests that are prerequisites to intervention as of right" (Item 30, ¶¶ 7–9); (2) that CCAC's interests could not be impaired by the outcome of this action, because there is nothing about the action that affects CCAC's ability to move ahead with an Article 78 proceeding in state court challenging the DEC's issuance of the permit (*id.*, ¶ 10); (3) that the Town is vigorously defending Local Law No. 1, and there is nothing to substantiate CCAC's claim that it will be unable to continue doing so if its elected officials decide that such a course is appropriate (*id.* ¶¶ 11–12); (4) that the possibility that the Town may choose to settle this litigation at some point is not a basis for intervention (*id.*, ¶ 12); (5) that CCAC has not demonstrated why it needs to be a party to this action in order to offer legal and financial assistance to the Town (*id.*, ¶ 13); (6) that CCAC's intervention will delay Hyland's ability to obtain a rapid resolution on the merits, and so will further delay the project and perhaps place it in jeopardy (*id.*, ¶¶ 14–16); (7) that CCAC's participation in this action will not assist the court in resolving the dispute, and will cause Hyland to incur additional expenses (*id.* ¶¶ 14, 17–18); and (8) that CCAC's motion to intervene is untimely (*id.*, ¶ 19).

On July 17, 1995, CCAC filed a reply affidavit addressing many of Hyland's arguments. Item 32. The issues have been fully addressed both in briefs (Items 24, 29, and 33) and at oral argument. The court has also received submissions from both Hyland and CCAC concerning the numerous affidavits filed by CCAC members. Items 119, 120, 127.

## DISCUSSION

### 1. Intervention as of Right

CCAC has moved to intervene as of right pursuant to Fed.R.Civ.P. 24(a)(2).[2] In the Second Circuit, intervention under Rule 24(a)(2) is granted when an applicant:

(1) files a timely motion; (2) asserts an interest relating to the property or transaction that is the subject matter of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) has an interest not adequately represented by the other parties.

*United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 70 (2d Cir.1994) (citing *United States v. State of New York,* 820 F.2d 554, 556 (2d Cir.1987); *Restor–A–Dent Dental Lab., Inc. v. Certified Alloy Prods., Inc.,* 725 F.2d 871, 874 (2d Cir.1984)). Intervention will be de-

---

1. On August 18, 1995, Hyland filed an affidavit of Glenn Herdman which, *inter alia,* challenges the accuracy of statements in the affidavits of some CCAC members that they live within one mile of the proposed facility. Item 127.

2. Fed.R.Civ.P. 24(a)(2) provides:
 (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

nied unless all four requirements are met. *Id.* Nevertheless,

> [a]pplication of the Rule requires that its components be read not discretely, but together. A showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation. Similarly, where representation is clearly inadequate, a lesser interest may suffice as a basis for granting intervention.

*United States v. Hooker Chemicals & Plastics Corp.,* 749 F.2d 968, 983 (2d Cir.1984).

### a. Timeliness

◼ Hyland argues that CCAC's motion is untimely. Item 29, pp. 19–20. Whether a motion to intervene is timely is "within the sound discretion of the trial court from all the circumstances." *United States v. Pitney Bowes, Inc.,* 25 F.3d at 70. There is no precise definition of timeliness. Among the factors generally considered are:

> (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.

*Id.* (citing *United States v. State of New York,* 820 F.2d at 557).

Hyland contends that this action is unusual, involving a request for expedited relief on its Commerce Clause claim under Rule 65. The Commerce Clause issue has already been fully briefed by the parties, as has the Town's abstention motion. CCAC's motion, it argues, causes delay which prejudices Hyland's ability to obtain a rapid resolution of the dispute. Furthermore, it maintains, CCAC has delayed inexplicably in filing its motion and has offered no explanation for its delay, warranting the inference that the delay was intentional. Item 29, pp. 19–20.

As CCAC points out, the instant action was filed on April 13, 1995, and CCAC filed its motion to intervene just ten weeks later, on June 27, 1995. Item 24, p. 8. At that time, Hyland's motion for injunctive relief based on its Commerce Clause claim and the Town's abstention motion were both pending,

and had not been decided. No date for oral argument had been set. The Town's motion to lift the stay on its action for declaratory judgment in State Supreme Court, and Hyland's cross-motion to dismiss that action, were also pending. This court had indicated to the parties that no immediate decision would be forthcoming on the motions pending here, and that the court should be kept informed as to any developments in the state court action. Under these circumstances, there is no reason to find that CCAC's motion is untimely.

### b. CCAC's Interest in the Transaction that is the Subject of the Action

◼ Hyland and CCAC disagree as to the standard to be applied in determining whether CCAC's interest in the subject matter of this litigation is sufficient to support intervention as of right. In its main brief, CCAC argued that "[a]n applicant seeking to intervene in an existing action as of right need not demonstrate a litigable interest, comprised of constitutional standing and a personal cause of action such as would support an independent lawsuit." Item 24, p. 9. Instead, what is required "is that the asserted interest be 'significantly protectable.'" *Id.* (citing *Restor–A–Dent Dental Lab., Inc. v. Certified Alloy Prods., Inc.,* 725 F.2d at 874). Without elaborating on the definition of a "significantly protectable" interest, CCAC maintained that Courts of Appeals had routinely found sufficient interests to permit intervention by citizens' groups like CCAC in cases in which the validity of statutes and regulations supported by those groups was being challenged. *Id.* (citing three Ninth Circuit cases, *United States v. Stringfellow,* 783 F.2d 821 (9th Cir. 1986), *vacated on other grounds,* 480 U.S. 370, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987); *Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525 (9th Cir.1983); and *Washington State Building and Construction Trades Council, AFL–CIO v. Spellman,* 684 F.2d 627 (9th Cir.1982), *cert. denied sub nom. Don't Waste Washington Legal Defense Foundation v. Washington,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983)).

In its brief in opposition, Hyland argues that the interest asserted by a prospective

intervenor must be "direct, as opposed to remote or contingent." Item 29, p. 3 (citing *Restor–A–Dent Dental Lab., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d at 874). It must be " 'substantial' and 'legally protectable.' " *Id.* (quoting *New York News, Inc. v. Kheel*, 972 F.2d 482, 486 (2d Cir.1992)). It must also "be based on a right which belongs to the proposed intervenor, rather than an existing party to the suit." *Id.* at 4 (citing *Wade v. Goldschmidt*, 673 F.2d 182, 185, n. 5 (7th Cir.1982)). These requirements "implicitly incorporate[ ] the criteria for standing under Article III of the United States Constitution." *Id.* "CCAC has advanced no decisional support for its conclusory claim that it need not demonstrate 'standing' to intervene as of right." *Id.* at 5. Nor, according to Hyland, can CCAC demonstrate standing, or any interest that is direct, substantial, or legally protectable in the sense contemplated by Rule 24(a)(2). *Id.* at 5–8.

CCAC counters in its reply memorandum that the Article III requirement that only "cases" or "controversies" be decided by the federal courts is met when a plaintiff who satisfies the threshold constitutional standing requirement initiates a lawsuit. Item 33, p. 2. At that point, the plaintiff's claim becomes justiciable, and standing ceases to be an issue as long as the original plaintiff remains a party to the suit. *Id.* (quoting *Diamond v. Charles*, 476 U.S. 54, 68, 106 S.Ct. 1697, 1706, 90 L.Ed.2d 48 (1986) (" . . . an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III")). According to CCAC, the Article III standing requirement has been imposed only on plaintiffs who wish to initiate lawsuits, and not on additional parties who are joined or who intervene once the litigation has begun. *Id.* at 3 (citing *Diamond v. Charles*, 476 U.S. at 68, 106 S.Ct. at 1706; *Wade v. Goldschmidt*, 673 F.2d at 184; and *United States Postal Service v. Brennan*, 579 F.2d 188, 190 (2d Cir. 1978)). In arguing that Article III standing is necessary to meet the "interest" requirement of Rule 24(a)(2), Hyland relies on "a series of out-of-context quotations." *Id.*

The Supreme Court has left open the question of whether a party seeking to intervene before a district court under Rule 24(a)(2) must satisfy the requirements of Article III. *See Diamond v. Charles*, 476 U.S. at 68–69, 106 S.Ct. at 1706–07. In *Diamond,* the Court noted that "[t]he Courts of Appeals have reached varying conclusions as to whether a party seeking to intervene as of right must himself possess standing." *Id.* at 68, n. 21, 106 S.Ct. at 1707, n. 21 (citing cases from Courts of Appeals for the Seventh, Eighth, Ninth, and District of Columbia Circuits).

The Second Circuit has held that prospective intervenors need not satisfy Article III standing requirements. *United States Postal Service v. Brennan*, 579 F.2d at 190 ("[t]he existence of a case or controversy having been established as between the Postal Service and the Brennans, there was no need to impose the standing requirement upon the proposed intervenor"). In more recent cases, however, the court has indicated that an intervenor's interest must "be direct, substantial, and legally protectable." *New York News, Inc. v. Kheel*, 972 F.2d at 486; *Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 922 F.2d 92, 96–97 (2d Cir.1990). It must be " 'direct and immediate,' not 'remote or contingent.' " *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*, 797 F.2d 85, 88 (2d Cir.1986) (quoting *Restor–A–Dent Dental Lab., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d at 874). This standard appears to resemble that for Article III standing, which requires " 'a legally-protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical.' " *Schulz v. Williams*, 44 F.3d 48, 52 (2d Cir.1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)). But the court has not expressly ruled that prospective intervenors must meet Article III standing requirements, and has implicitly left the question open. *See Schulz v. Williams*, 44 F.3d 48 (holding that an intervenor who wishes to appeal a district court decision in the absence of an appeal by another party with Article III standing must himself satisfy the Article III requirements

for standing, and noting that " '[a]n interest strong enough to permit intervention is not necessarily a sufficient basis to pursue an appeal abandoned by the other parties.' " *Id.* at 52, n. 3 (quoting *Didrickson v. United States Department of the Interior*, 982 F.2d 1332, 1338 (9th Cir.1992))).

The requirements for Rule 24(a)(2) intervention must be read "in the context of the particular statutory scheme that is the basis for the litigation at the time the motion is decided," and "although the Rule does not say so in terms, common sense demands that consideration also be given to matters that shape a particular action or particular type of action." *Unites States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d at 983. " 'The rule was designed with … traditional private action[s] in mind, and its adaptation to other contexts requires a flexible reading of its provisions.' " *Id.* (quoting *Note, Intervention in Government Actions*, 89 Harv.L.Rev. 1174, 1177 (1976), and citing *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C.Cir.1967) (rule tailored for private actions and must be read differently in other contexts)). The Supreme Court has recognized that "certain public concerns may constitute an adequate 'interest' within the meaning of [Rule 24(a)(2)]." *Diamond v. Charles*, 476 U.S. at 68, 106 S.Ct. at 1706 (citing *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 135, 87 S.Ct. 932, 936–37, 17 L.Ed.2d 814 (1967)). Thus, in considering CCAC's motion to intervene in the instant action, the court must take into account both the public nature of the action (a challenge to the validity of a local law designed to preserve environmental quality for the community as a whole), and the basis for, and strength of, CCAC's particular interest in the outcome of the litigation.

With these considerations in mind, the court finds that CCAC has asserted far more than a general, academic, or peripheral interest in the validity of Local Law No. 1. It has alleged that the personal interests of its individual members in the integrity of local air and water resources, in the continued rural and residential character of the Town, and in the maintenance of their property values, are threatened by the proposed development of a solid waste disposal facility which Local Law No. 1 was enacted to prevent. As Hyland concedes, CCAC has worked vigorously to oppose the project over a period of seven years, and has participated as a party in the DEC permitting proceedings. It took an active role in encouraging the Town to draft and adopt Local Law No. 1, for the specific purpose of opposing the Hyland project, and it has a clear interest in the continuing constitutional viability of that law. It has a legitimate interest in placing before this court its argument that Hyland's constitutional claims are not ripe for adjudication because the administrative process, in which CCAC is a party intervenor, is not yet complete. Its interests are thus more than sufficient to support intervention as of right under Rule 24(a)(2). *Cf., In re Sierra Club*, 945 F.2d 776 (4th Cir.1991) (environmental organization that had party status in an administrative permitting proceeding entitled to intervene in an action brought in federal court by another party to the proceeding challenging the constitutionality of a governing state regulation); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (national and local wildlife organizations entitled to intervene in a federal court action challenging the legality of actions taken by the Secretary of the Interior to establish the Snake River Birds of Prey National Conservation Area); *Washington State Building and Construction Trades Council, AFL–CIO v. Spellman*, 684 F.2d at 629–30 (public interest group that sponsored statute as a ballot initiative had a right to intervene in an action challenging the constitutionality of the statute), *accord Yniguez v. State of Arizona*, 939 F.2d 727, 735 (9th Cir.1991); *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861 (8th Cir.1977) (neighborhood association whose professed purpose was to preserve property values and insure that abortion facilities did not affect the health, welfare, and safety of citizens entitled to intervene in an action challenging the constitutionality of a local ordinance imposing a moratorium on the construction of abortion clinics); *New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York*, 516 F.2d 350 (2d Cir.1975) (pharmacists' organization and individual pharmacists had a right to intervene

in an action brought by consumers to challenge a statewide regulation prohibiting the advertising of the price of prescription drugs).

The cases relied on by Hyland do not require a different result. One, from the Second Circuit, warrants comment. In *Orange Environment, Inc. v. County of Orange*, 817 F.Supp. 1051 (S.D.N.Y.), *aff'd* 2 F.3d 1235 (2d Cir.1993), the Orange County Legislature sought to intervene in an environmental enforcement action brought by the plaintiff against the County. The district court had ruled that in the course of constructing a landfill, the County had violated the Clean Water Act, 33 U.S.C. § 1251 *et seq.* Shortly thereafter, the County Executive announced that there would be no appeal of that ruling, and that the County would no longer pursue development of the landfill. The County Legislature moved to intervene for the purpose of appealing the district court's decision. The court denied intervention, but not on the basis that the Legislature's concern over the future of the landfill was inadequate to satisfy the "interest" requirement of Rule 24(a)(2). *Orange Environment, Inc. v. County of Orange*, 817 F.Supp. at 1060. Rather, it found that the Legislature's interest was, like that ·of the County Executive, identical to that of the County as a whole. Under the Orange County Charter, that interest was properly represented in the litigation by the County Attorney, who was answerable to the County Executive. The Legislature had failed to identify any independent institutional interest that would be compromised by County Executive's decision not to appeal. *Id.* at 1056–62.[3]

Two other cases relied on by Hyland, *United States v. 36.96 Acres of Land*, 754 F.2d 855 (7th Cir.1985), *cert. denied sub nom. Save the Dunes Council, Inc. v. United States*, 476 U.S. 1108, 106 S.Ct. 1956, 90 L.Ed.2d 364 (1986), and *Westlands Water District v. United States*, 700 F.2d 561 (9th Cir.1983), are more pertinent. Both are distinguishable from the present case—the first was a condemnation action brought by the United States under a federal statute, the second an action for injunctive and declaratory relief pursuant to certain government contracts. But to the extent that their holdings may be viewed as incompatible with the result reached here, I find them unpersuasive. *Cf. United States v. 36.96 Acres of Land*, 754 F.2d at 860–62 (Cudahy, J., dissenting).

### c. Effect of Disposition of This Action on CCAC's Interest

■ CCAC maintains that its interests will be impaired by an adverse judgment here, since such a judgment will result in Hyland's being able to move ahead with developing and operating the monofill that CCAC opposes. Item 24, pp. 12–13. Hyland responds that since CCAC has an alternative means of protecting its interests—its Article 78 proceeding—the outcome of this litigation will not impair those interests. Item 29, pp. 8–9.

It is plain enough that "the disposition of th[is] action may, as a practical matter, impair or impede" CCAC's interests. *United States v. Pitney Bowes, Inc.*, 25 F.3d at 70. It is true that CCAC is challenging the DEC's issuance of the necessary permits to Hyland in an Article 78 proceeding. Nevertheless, as things stand now, Hyland possesses those permits, and Local Law No. 1 appears to be the only significant legal impediment to the start of construction of the monofill.[4] If this court were to find Local Law No. 1 to be invalid, it would seem that Hyland could move forward with development, absent a ruling to the contrary in CCAC's Article 78 action.

---

3. More specifically, the court found that the litigation concerned the community interests of the citizens of Orange County, and not those of the Legislature *qua* Legislature. *Orange Environment, Inc. v. County of Orange*, 817 F.Supp. at 1056. The disagreement between the Legislature and the County Executive over whether or not to appeal the district court's ruling was a "quarrel over litigation tactics," which did "not represent a legally cognizable injury to the County Legislature providing it standing to intervene." *Id.* at 1060.

4. Hyland must apparently still submit, and the DEC must approve, a stormwater management plan before construction may begin. Item 14, ¶ 11.

Further, in addition to its interest in protecting the local environment and preserving property values in the area surrounding the proposed monofill, CCAC has a direct interest in the validity of Local Law No. 1, for which it lobbied actively. That interest would unquestionably be impaired by a ruling in this court that Local Law No. 1 is unconstitutional.[5]

### d. Representation of CCAC's Interests by the Town

■ CCAC argues that its interests are not being, or may not be, adequately represented by the Town in this case for two main reasons. First, it maintains that the Town, being a rural, residential community, has limited financial resources, and may come under increasing pressure to settle this action and permit Hyland to construct its proposed facility solely because of the continuing costs of this litigation. Item 24, p. 14; Item 26, ¶¶ 34–38; Item 32, ¶ 26.[6] Second, it argues that the Town has not espoused, and will not assert in this case, the position taken by CCAC that because of the pending Article 78 action challenging the propriety of the administrative process that resulted in permits being issued to Hyland, Hyland's constitutional claims are not yet, and may never be, ripe for adjudication. Item 32, ¶¶ 20–21; see also, Item 33, p. 8. While CCAC wishes to raise that issue here, the Town is unlikely to do so because it would be inconsistent with the position it has taken in its state court action against Hyland—that the constitutionality of Local Law No. 1 is indeed ripe for adjudication. Item 32, ¶ 21; see also, Item 10, Affirmation of Paul Britton, ¶ 16.[7]

Hyland contends that CCAC should not be allowed to intervene because the Town is aggressively defending Local Law No. 1, and there is nothing to substantiate CCAC's claim that the Town will be unable to continue with this litigation if its elected officials decide that it is appropriate to do so. Item 30, ¶¶ 11–12; see also, Item 119. The fact that some Town residents are urging the Town to settle, and the fact that the Town Board may decide to settle at some future time, is not a basis for intervention. Item 30, ¶ 12. Hyland acknowledges that the propriety of the DEC Commissioner's actions will be heard and determined in the Article 78 proceeding, but it maintains that that "[has] no relevance whatsoever to this constitutional challenge to Local Law No. 1." Item 119. Without addressing the merits of the argument that CCAC should be allowed to intervene in part because the Town has not raised, and is unlikely to raise, the issue of ripeness, Hyland simply contends that it will be prejudiced by the delay and expense of having to oppose any motion brought by CCAC on ripeness and abstention grounds. Id.

The Town supports intervention, without commenting on its own ability to represent the interests of CCAC and its members, or mentioning the issue of ripeness. Item 28.

■ Generally, the burden of making a showing of inadequate representation by an existing party "should be treated as minimal." Trbovich v. United Mine Workers of America, 404 U.S. 528, 538, n. 10, 92 S.Ct. 630, 636, n. 10, 30 L.Ed.2d 686 (1972). Hyland contends, however, that in this case the Town is defending Local Law No. 1 in its role as parens patriae, and is presumed to represent the interests of all of its citizens, so a stronger showing of inadequate representation should be required. Item 29, pp. 9–12

---

5. In this context, Hyland's claim that CCAC's interests may be protected in an Article 78 proceeding rings particularly hollow, when one considers that the company argues strenuously that its own constitutional arguments are ripe for adjudication here precisely because Local Law No. 1, and not any administrative proceeding, "render[s] the Hyland project dead in its tracks." Item 14, ¶ 12.

6. CCAC submits the affidavit of a member of the Town Board in support of this contention. Item 26, Ex. M.

7. CCAC also indicates that it wishes to argue here that in view of the pending Article 78 proceeding, this court should abstain from adjudicating Hyland's constitutional claims under the doctrine of Railroad Commission of Texas v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Item 32, ¶¶ 18–19; Item 33, p. 8. The Town has not raised the issue of Pullman abstention here, but is not clear whether or not CCAC believes that there is any impediment to it doing so.

(citing *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d at 984–87). CCAC takes the position that the higher burden is inapplicable in cases in which a private party, like Hyland in the present case, has mounted an attack on the validity of a government regulation. Item 24, pp. 13–14 (citing *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d at 987, and *New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York*, 516 F.2d at 352).

In *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, various public interest organizations sought to intervene as of right in an environmental enforcement action brought by the United States, *id.* at 969–71, and by New York State " 'on behalf of itself and as *parens patriae* on behalf of all residents and citizens of the State of New York.' " *Id.* at 972 (quoting the State's complaint). In examining this court's denial of intervention as of right, the Second Circuit reviewed the *parens patriae* doctrine as it had been applied in other circuits. *Id.* at 984–85. The court held that "[w]hether or not it is particularly helpful to speak of a 'presumption' of adequate representation by the sovereign in *parens patriae* litigation, we agree ... that, in litigation of this sort, a greater showing that representation is inadequate should be required." *Id.* at 985. A careful reading of the case indicates that by "litigation of this sort," the court meant enforcement actions brought by government plaintiffs. "[N]othing in the law of this circuit shakes our agreement with other circuits that *in an enforcement action by a governmental entity suing as a parens patriae*, it is proper to require a strong showing of inadequate representation before permitting intervenors to disrupt the government's exclusive control over the course of its litigation." *Id.* at 987 (emphasis added).

The Second Circuit looked again at the question of adequate representation in *Natural Resources Defense Council, Inc. v. New York State Department of Environmental Conservation*, 834 F.2d 60 (2d Cir.1987), in which the American Petroleum Institute sought to intervene in a citizen suit brought against the federal and state government defendants under § 304(a) of the Clean Air Act, 42 U.S.C. § 7604(a). *Id.* at 61. The court emphasized that a claim of inadequate representation cannot be premised simply on the contention that the prospective intervenor has a motive to litigate that is different from the motive of an existing party. *Id.* at 62. "So long as the party has demonstrated sufficient motivation to litigate vigorously *and to present all colorable contentions*, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented." *Id.* (emphasis added). It went on to note that "though this is not a case where a governmental entity is suing as *parens patriae, see United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968 (2d Cir.1984), the fact that the suit is being defended by the combined legal forces of the United States and the State of New York weighs against a conclusion that Judge Lasker exceeded his discretion in concluding that the interests of API are adequately represented." *Id.*

 The cases cited above indicate that in considering a motion to intervene as of right on the side of a government entity in an action in which the government entity is not suing as *parens patriae*, but rather is defending the legality of its actions or the validity of its laws or regulations, courts should examine both (1) whether the government entity has demonstrated the motivation to litigate vigorously and to present all colorable contentions, and (2) the capacity of that entity to defend its own interests and those of the prospective intervenor.

With these considerations in mind, I find that CCAC has met its burden of demonstrating that its interests may not be adequately represented by the Town in this action. It has argued persuasively that the Town is not motivated to raise the issue of the ripeness of Hyland's constitutional claims before this court, and that as a party intervenor, CCAC itself would raise that issue in a timely fashion. Further, it has raised a significant question as to the Town's capacity to defend its own interests and those of CCAC

and its members in this litigation. *See* Item 26, ¶¶ 34–41 and Ex. M.[8]

**e. CCAC Has Satisfied the Requirements for Intervention As of Right Under Fed. R.Civ.P. 24(a)(2)**

As indicated above, I find that CCAC has satisfied all four of the requirements of Fed. R.Civ.P. 24(a)(2). Therefore, it may intervene in this action as of right. *United States v. Pitney Bowes, Inc.,* 25 F.3d at 70. Considering the four components of the rule together, *see United States v. Hooker Chemicals & Plastics Corp.,* 749 F.2d at 983, it is clear that CCAC has made a sufficient showing to warrant intervention.

**2. Permissive Intervention**

Since CCAC may intervene as of right under Fed.R.Civ.P. 24(a)(2), it is unnecessary to consider the question of intervention as a matter of discretion under Fed.R.Civ.P. 24(b)(2).

**CONCLUSION**

For the reasons given above, CCAC's motion to intervene as of right (Item 23) is granted. A telephone conference will be held with the parties on September 6, 1995, at 10 a.m. for the purpose of setting a further schedule.

So ordered.

---

8. In this regard, I find particularly noteworthy a letter dated April 17, 1995, signed by plaintiff Glenn Herdman and addressed to Town residents, which notes that "[s]ince the beginning of the Hyland Project the Town Board has spent over $100,000 of our tax money to oppose this project. This is half of an entire annual budget of the Town ..." Item 26, Ex. M.