**COMMACK SELF–SERVICE KOSHER MEATS, INC. d/b/a Commack Kosher, Brian Yarmeisch and Jeffrey Yarmeisch, Plaintiffs,**

v.

**Rabbi Schulem RUBIN as Director of the Kosher Law Enforcement Division of The New York State Department of Agriculture and Markets, Defendant.**

CV–96–0179(NG)(ETB).

United States District Court,
E.D. New York.

Dec. 9, 1996.

Robert Jay Dinerstein, Dinerstein & Lester, PC, Commack, New York, for Plaintiffs.

Marion R. Buchbinder, Assistant New York Attorney–General, New York City, for Defendant.

Nathan Lewin, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for Intervenors.

## MEMORANDUM OPINION AND ORDER

BOYLE, United States Magistrate Judge.

Several Jewish organizations, the Speaker of the New York Assembly, a competing merchant, a rabbi, and individual consumers of kosher foods (collectively "intervenors" or "movants") request leave to intervene as of right under Fed.R.Civ.P. 24(a)(2), or alternatively, as a matter of discretion under Fed. R.Civ.P. 24(b)(2) (permissive intervention), as defendants in this action. The proposed intervenors are: (1) the Honorable Sheldon Silver, in his official capacity as Speaker of the New York State Assembly and co-sponsor of the original New York Kosher laws, and in his individual capacity as a consumer of kosher products; (2) Abe Alper, Jack Lee, and Richard Schwartz as consumers of kosher foods; (3) Jon Greenfield, President of Food Parade, Inc., a competing kosher food company; (4) Rabbi Portnoy who advises his congregants on kosher food products and is a kosher observer; and (5) the following Orthodox Jewish Organizations: Agudath Harabonim of the United States and Canada; Agudath Israel of America; National Council of Young Israel; Rabbinical Alliance of America; Rabbinical Council of America; Orthodox Jewish Congregations of America; and Torah Umesorah–National Society of Hebrew Day Schools. *See Movants' Proposed Answer*, dated May 31, 1996, at 2–4.

The defendant, Rabbi Schulem Rubin, named in the amended complaint in his official capacity as the Director of the Kosher Law Enforcement Division of the New York State Department of Agriculture and Markets, is represented by the New York Attorney–General ("State" or "defendant"). Plaintiffs and the defendant object to intervention.

By order dated July 11, 1996, the Honorable Denis R. Hurley[1] referred this matter, pursuant to Fed.R.Civ.P. 72(a), to the undersigned. *See United States v. Certain Real Property,* 751 F.Supp. 1060 (E.D.N.Y.1989) (holding that a motion to intervene is not dispositive of a claim or defense of a party). Briefs were submitted by all parties, and oral argument was heard on August 20, 1996.

## Description of the Action

The plaintiffs, Commack Self–Service Kosher Meats, Inc., d/b/a Commack Kosher, and its owners, Brian and Jeffrey Yarmeisch, are merchants engaged in the business of selling kosher meats and products on Long Island (collectively referred to as "Commack Kosher" or "plaintiffs"), and bring this declaratory judgment action against Rabbi Rubin Schulem, the Director of the Kosher Law Enforcement Division of the New York State Department of Agriculture and Markets to challenge the constitutionality[2] of New York Agriculture and Markets Law §§ 201–a *et seq.* (the "Kosher Laws" or the "statute").

This action arises from multiple prosecutions by the State against Commack Kosher, during the period July 1986 to February 1993 for violations of the New York Kosher law. The plaintiffs allege that: (1) the Kosher Laws violate their First Amendment rights to the free exercise of religion; (2) denies the plaintiffs, who are Jewish but not observants of Orthodox Judaism, equal protection of the law; (3) the term "kosher" and the phrase "orthodox Hebrew religious requirements," defined within the state statute, are unconstitutionally overbroad and vague; and (4) the creation of a state supported kosher advisory board[3] to enforce the Kosher Laws is "an impermissible entanglement of the affairs of church and state." The plaintiffs seek to enjoin the Department from disseminating information concerning future violations of the Kosher Laws to the public until after the alleged offender is found to be guilty.

## INTRODUCTION

The plaintiffs are challenging the constitutionality of the New York Agriculture and Markets Law §§ 201–a *et seq.* Section 201–a(1) of the Kosher Laws provides, in relevant part:

A person who, with intent to defraud, sells or exposes for sale any meat or meat preparations, article of food or food products, and falsely represents the same to be kosher or kosher for Passover, whether such meat or meat preparations, article of food or food products, be raw or prepared for human consumption, or as having been prepared under ... the orthodox Hebrew religious requirements, either by direct statement orally, or in writing, which might reasonably be calculated to deceive or lead a reasonable man to believe that a representation is being made that such food is kosher or prepared in accordance with the orthodox Hebrew religious requirements, or falsely represents any food products or the contents of any package or container to be so constituted and prepared, by having or permitting to be inscribed thereon the word 'kosher' or 'kosher style' in any language ... is guilty of a class A misdemeanor, except that a person who with intent to defraud sells or exposes for sale on premises any meat or meat preparations and falsely represents the same to be kosher or kosher for Passover, provided said meat or meat preparations in violation has a retail value in ex-

---

1. The case was re-assigned to the Honorable Nina Gershon, *D.J.*, on August 16, 1996.

2. The plaintiffs commenced this civil action on January 16, 1996. On April 15, 1996, the plaintiffs filed an amended complaint deleting their prior claim for money damages based on defamation.

   On May 8, 1996, the plaintiffs commenced a civil rights action, pursuant to 42 U.S.C. § 1983, docket No. 96–CV–2313, against the State of New York, wherein Commack Kosher seeks to recover damages for alleged violations of their right to free exercise of religion, the equal protection of the laws, and due process of law.

3. To assist the Department of Agriculture and Markets with enforcement of the Kosher Laws, the New York legislature enacted § 26–a of the N.Y.Agric. & Mkts.Law which established a nine person advisory board to counsel the commissioner on policy matters, confer and discuss regulations regarding the preparation of kosher foods, and propose amendments to the statute. N.Y.Agric. & Mkts.Law § 26–a(4).

cess of five thousand dollars, whether such meat or meat preparations be raw or prepared for human consumption, is guilty of a class E felony. Possession of non-kosher meat and food, in any place of business advertising the sale of kosher meat and food only, is presumptive evidence that the person in possession exposes the same for sale with intent to defraud, in violation of the provisions of this section.

The plaintiffs contend that the Department's inspectors enforce the Kosher Laws in an arbitrary and capricious manner. *Amended Complaint*, ¶ 246, at 26. They further assert that since the inspectors are not required to be ordained as rabbis, they are unqualified to determine whether food products have been prepared in accordance with the Jewish laws governing kashruth.[4] *Id.* ¶ 56, at 8.

The plaintiffs have received citations from the defendant for five violations of the Kosher Laws within the past ten years. Two are still pending. The most recent offense occurred in February 1993, when Inspector P. Schnell [5] cited the plaintiffs for attempting to sell as kosher, poultry that did not bear the proper labeling.[6] Within Inspector Schnell's report, he stated, "I found 19 packages of Falls Brand boneless turkey thighs [in the walk-in refrigerator]. Non[e] of the 19 packages had soaked & salted [labels] on them." *Amended Complaint*, Exhibit 1.

Commack Kosher disputed the report and claimed that at the time of the inspection, the poultry in issue had not been offered to the public for sale. Commack Kosher further asserted that eighteen of the nineteen packages referred to in Inspector Schnell's report had not been removed from the boxes in which they were originally delivered and that each box contained a label indicating that the poultry "was kosher in accordance with the supervisory standards of the Union of Orthodox Congregations." *Amended Complaint*, ¶¶ 81–100, at 10–12.

Approximately one month following the inspection, the plaintiffs received a letter, signed by Deborah D'Agostino, an Administrative Aide within the Department's Penalty Unit, informing the plaintiffs that they had been assessed a fine, pursuant to the statute's penalty provisions, totaling $11,100. *Amended Complaint*, Exhibit 2. Plaintiffs claim that the Department thereafter disseminated the details of the incident in a public information release which was published in at least two Jewish periodicals; *Kashrus*, a magazine that addresses kosher issues, and *The Jewish Press*, a weekly newspaper. *Id.* ¶¶ 107–20, at 13–14.[7]

4. "Kashruth," also referred to as or "kashrut" or "kashrus", which literally means 'fitness', is defined as: (1) the state of being kosher and (2) the Jewish dietary laws. *Webster's Collegiate Dictionary*, 625 (8th ed. 1981).

5. P. Schnell was appointed to the position of Kosher Food Inspector in November 1987. *Answer to Amended Complaint*, ¶ 7, at 2.

6. Commack Kosher received similar citations in July 1986, January 1987, April 1988, and January 1992. In July 1986, the plaintiffs were cited for failing to soak and salt veal spare ribs. Although the plaintiffs claim that their products are properly soaked and salted, they opted not to challenge the violation and paid the $600. fine. *Amended Complaint*, ¶¶ 150–61, at 17–18.

The following year, the plaintiffs were again cited for possession of an unsalted product—side steaks. The plaintiffs resolved this dispute by paying a $300. fine with no admission of guilt. *Id.* ¶ 171, at 19.

In April 1988, the Department quarantined unkosher lamb tongues which it found within the plaintiffs' Commack establishment. Commack Kosher has challenged the Department's decision, and this charge is still pending. *Id.* ¶¶ 173–80, at 19.

Finally, in January 1992, the plaintiffs received a citation for failing to affix state-approved "plumbas" to some of its meat products. *Id.* ¶¶ 181–82, at 20. [A "plumba" is a symbol that bears the date and time of slaughter, and pursuant to § 201–f(1)(a) of the Agriculture and Markets Law, must be affixed to kosher meat products while the meat is in the slaughterhouse.] *Id.* ¶ 181, at 20 n. 14. Commack Kosher contends that plastic plumbas were attached to its products which contained all of the statutory required information and were in compliance with the governing laws of kashruth. At the time the Department required the use of metal plumbas. *Id.* ¶¶ 184–86, at 20. The plaintiffs allege that the defendant assessed a fine of $1000. which plaintiffs have not paid. It therefore appears that this violation also remains pending.

7. The plaintiffs contend that "an allegation that a purportedly kosher facility acted in contravention of the laws governing *kashruth* is a reflection upon the integrity and reliability of the proprietors of the purportedly kosher facility" and that the resulting "damage is irreparable." *Amended Complaint*, ¶¶ 119–21, at 14.

The plaintiffs challenged the violation, and the Department eventually rescinded the accompanying fine. On June 22, 1993, Michael McCormick, Esq., an attorney for the Department, confirmed in writing the Department's decision to expunge the violation. *Amended Complaint,* Exhibit 3. Mr. McCormick wrote, "[T]he Department hereby withdraws the above-referenced penalty assessment. After review of the inspection narrative and your letter of April 19, 1993 ... the facts do not support the assessment.... Notice of the Department's withdrawal of the assessment will be included in our next public information release concerning penalties." *Id.*

The plaintiffs maintain that they suffered irreversible harm following the publication of the now-expunged citation.[8] *Id.* ¶¶ 127, 136–41, at 15–16.

## A. *The Intervenors' Position*

The intervenors assert that they have a legal interest in upholding the New York Kosher Laws and that they have satisfied the requirements for intervention as of right [Fed.R.Civ.P. 24(a)(2) ][9] and permissive intervention [Fed.R.Civ.P. 24(b)(2) ].[10] *Memorandum In Support of Motion To Intervene,* at 3; (12, 16–17).[11] The intervenors contend that the State will not adequately represent their interests in upholding the Kosher Laws in this action. They claim that, because the complaint contains allegations "that the named defendants acted " 'arbitrar[ily]' and 'capricious[ly]' " in enforcing the statute and "with reckless disregard as to ... truth or falsity," the Department's attention may be diverted to the non-constitutional issue in the case, and the constitutionality of New York's Kosher laws—which the intervenors seek to staunchly defend—will not receive adequate attention. *Memorandum In Support of Motion To Intervene,* at 8–10; (5–6).

The intervenors further assert that intervention is necessary to safeguard against the possibility of the State's abandonment of the case or an unsatisfactory settlement and to preserve their right to appeal any adverse decision in the in the district court (7–8).

## B. *Commack Kosher's Position*

The plaintiffs assert that the intervenors' motion is untimely, having been brought 135 days following the original complaint, approximately forty-six days after the amended complaint had been filed. They assert that the proposed intervenors lack sufficient interest in the subject of the action to intervene, and that the State, which is represented by the New York Attorney–General, will adequately represent the intervenors' interests. *Plaintiffs' Memorandum in Opposition To Motion To Intervene,* at 3–9; (25–27). ·Commack Kosher further contends that the intervenors' "sole interest in this litigation is to advance their own agenda and retain Orthodox Judaism as the statutory standard for the kosher consumer," and that permitting them to intervene either as of right or by permissive intervention will unnecessarily delay the proceedings and unduly prejudice the plaintiffs. *Plaintiffs' Memorandum in Opposition To Motion To Intervene,* at 1, 9.

---

**8.** The plaintiffs also allege that they have not received notice from the Department that the citation had been officially removed from its record. *Amended Complaint,* ¶ 147, at 17.

**9.** Rule 24(a)(2) provides:
Upon timely application anyone shall be permitted to intervene in an action:
(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2).

**10.** Rule 24(b)(2) states, in pertinent part:
Upon timely application anyone may be permitted to intervene in an action:
(2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Fed.R.Civ.P. 24(b)(2).

**11.** Numbers in parentheses refer to pages of the record from oral argument held before the undersigned on August 20, 1996.

## C. *The State of New York's Position*

The State argues that the movants have failed to demonstrate a "compelling interest ... apart from [their] interest in a class with all other citizens and creatures of the state." The Attorney–General asserts that he will vigorously defend the constitutionality of the Kosher Laws. *Defendant's Memorandum In Opposition To Motion To Intervene*, at 7–11; (21–22). The New York Attorney–General also contends that the doctrine of *parens patriae*, which obligates the State to serve as "the guardian, benefactor, and representative of all [of its] citizens," applies in this action since the State is a party to the litigation. *Defendant's Memorandum In Opposition To Motion To Intervene*, at 6–7; (17–20).

In response to Speaker Silver's application to intervene in his official capacity, the State asserts that intervention violates the separation of powers principle, and that § 63 of the New York Executive Law provides the Attorney–General with the authority to "prosecute and defend all actions and proceedings in which the State is interested." N.Y.Exec. Law § 63(1). *Defendant's Memorandum In Opposition To Motion To Intervene*, at 8; (19–21).

The State asserts that the only factual dispute which may arise in this action involves the Department's practices and procedures. It is the State's position that the Department will provide the court with all relevant information pertaining to its application and enforcement of the Kosher Laws. *Defendant's Memorandum In Opposition To Motion To Intervene*, at 10; (23).

The State further argues that the addition of the intervenors as a named party will result in undue delay and duplicative representation. *Defendant's Memorandum In Opposition To Motion To Intervene*, at 14–15. The State welcomes the submission of a brief *amicus curiae* from the intervenors, however, it maintains that this should be the extent of the movants' involvement in this action. *Defendant's Memorandum In Opposition To Motion To Intervene*, at 15; (24).

For the reasons set forth below, the applicants' motion to intervene as of right is denied and their motion for permissive inter-vention is granted, provided however, that the application of Assembly Speaker Sheldon Silver, in his official capacity as a member of the New York State Legislature, is denied as a matter of permissive intervention, but his application for permissive intervention as an individual consumer, is granted. Intervention is further conditioned on the representation of all intervenors by the same counsel.

## DISCUSSION

### I. *Intervention As of Right*

In order to intervene as of right under Fed.R.Civ.P. 24(a)(2), an applicant must establish the following:

> (1) a timely motion; (2) an interest relating to the property or transaction that is the subject matter of the action; (3) an impairment of that interest without intervention; and (4) the movants' interest is not adequately represented by the other parties in the litigation.

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir.1994) (citing *United States v. State of New York*, 820 F.2d 554, 556 (2d Cir.1987); *Restor–A–Dent Dental Lab., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir.1984)); *Farmland Dairies v. Commissioner of New York Dep't of Agric.*, 847 F.2d 1038, 1043 (2d Cir.1988); *United States v. Hooker*, 749 F.2d 968, 983 (2d Cir. 1984). Intervention will be denied unless all four requirements are met. *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir.1990); *State of New York*, 820 F.2d at 556.

### A. *Timeliness*

■ Commack Kosher argues that the intervenors' motion is untimely. The determination of the timeliness of an application to intervene is "within the sound discretion of the trial court from all of the circumstances." *Herdman v. Town of Angelica*, 163 F.R.D. 180, 185 (W.D.N.Y.1995) (holding that a motion to intervene filed ten weeks after the commencement of the action was timely) (quoting *Pitney Bowes, Inc.*, 25 F.3d at 70); *see State of New York*, 820 F.2d at 556 (citing *NAACP v. New York*, 413 U.S. 345, 356–66, 93 S.Ct. 2591, 2598–2603, 37 L.Ed.2d 648

(1973)). There is no precise definition of timeliness. Among the factors that the court should consider to determine whether a motion to intervene is timely are:

> (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.

*Herdman,* 163 F.R.D. at 185 (citing *State of New York,* 820 F.2d at 557); *Farmland Dairies v. Commissioner of the New York State Dep't of Agric. and Mkts.,* 847 F.2d 1038, 1043–44 (2d Cir.1988).

The plaintiffs argue that the intervenors' motion is untimely because 135 days lapsed from the time the original complaint was filed prior to making their motion. The intervenors assert that the motion was filed just forty-six days after the plaintiffs amended their complaint and that neither Commack Kosher nor the State argue that they have been prejudiced by the timing of their motion to intervene.

On the facts herein, the court finds that forty-six days is not an unreasonable amount of time to file a motion to intervene. *Herdman,* 163 F.R.D. at 185 (motion to intervene made ten weeks after the complaint had been filed was timely). All discovery has been stayed pending a decision on the State's motions for abstention and to dismiss the complaint, and there is no prejudice as a result of the timing of this application. For the foregoing reasons, I find that the movants' motion to intervene is timely.

### B. The Intervenor's Interest in the Transaction that is the Subject of the Action

An intervenor's interest must be "direct, substantial, and legally protectable." *New York News, Inc. v. Kheel,* 972 F.2d 482, 486 (2d Cir.1992); *Washington Elec. Coop., Inc.,* 922 F.2d at 96–97. It must not be "remote or contingent." *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Sys., Inc.,* 797 F.2d 85, 88 (2d Cir.1986) (quoting *Restor–A–Dent Dental Lab., Inc.,* 725 F.2d at 874). However, the term "interest" defies a simple definition. *Restor–A–Dent Dental Lab., Inc.,* 725 F.2d at 874 (citations omitted). In *Restor–A–Dent Dental Lab., Inc.,* the court concluded that the 1966 amendments to Fed. R.Civ.P. 24(a) were intended to expand the right to intervene beyond those situations where the proposed intervenor "is or may be bound by a judgment in the action" or where the "applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof." 725 F.2d at 871 (quoting original Fed.R.Civ.P. 24(a)(2) and (3)). The amendment was intended to permit intervention where "an absentee would be substantially affected in a practical sense by the determination made in an action...." *Advisory Committee Notes,* 1966 Amendment, *Federal Civil Judicial Procedure and Rules,* at 104 (West Publishing, 1966 ed.).

The requirements for intervention as of right must be read "in the context of the particular statutory scheme that is the basis for the litigation at the time the motion is decided," and "although the Rule (Fed. R.Civ.P. 24) does not say so in terms, common sense demands that consideration also be given to matters that shape a particular action or particular type of action." *Herdman,* 163 F.R.D. at 187 (quoting *United States v. Hooker Chemicals & Plastics Corp.,* 749 F.2d 968, 983 (2d Cir.1984)). " 'The rule was designed with ... traditional private action[s] in mind, and its adaption to other contexts requires a flexible reading of its provisions.' " *Hooker Chemicals & Plastics Corp.,* 749 F.2d at 983 (citations omitted).

The Supreme Court has held that the intervenor's interest must be "significantly protectable." *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542–43, 27 L.Ed.2d 580 (1971); *see Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 154, 87 S.Ct. 932, 946–47, 17 L.Ed.2d 814 (1967) (Stewart, J., dissenting). More recently, the Supreme Court recognized that "certain public concerns may constitute an adequate 'interest' within the meaning of [Rule 24(a)(2)]." *Diamond v. Charles,* 476 U.S. 54, 68, 106 S.Ct. 1697, 1706, 90 L.Ed.2d 48 (1986) (citing *Cascade Natural*

*Gas Corp.*, 386 U.S. at 135, 87 S.Ct. at 936–37).

The court will address the "interest in the property or transaction" requirement from the perspective of the respective proposed intervenors.

### 1. Speaker Sheldon Silver In His Official Capacity

■ The Honorable Sheldon Silver, Speaker of the New York State Assembly, was the co-sponsor of the original New York Kosher laws, which are codified at §§ 201-a *et seq.* of the Agriculture and Markets Laws. As a member of the New York State Legislature, he has an interest in upholding the constitutionality of the laws enacted by the State Legislature. In *Orange Env't, Inc. v. County of Orange*, the trial court recognized that "[t]he County Legislature undoubtedly has institutional interests in its appropriations and lawmaking powers ..." to support intervention as a right. 817 F.Supp. 1051, 1056 (S.D.N.Y.), *aff'd*, 2 F.3d 1235 (2nd Cir. 1993).[12]

For these reasons, Speaker Sheldon has a sufficient interest in the subject of this action. The representation of this interest by the Attorney–General is discussed *infra* at 104–05.

### 2. Jim Greenfield

■ Movant Greenfield is the owner of two establishments in Plainview, New York, that sell kosher products and are in direct competition with the plaintiffs. Mr. Greenfield's interest in this action is based on his claim that he "cannot compete effectively in the kosher trade with merchants who sell nonkosher food as kosher." *Memorandum In Support of Motion To Intervene*, at 6.

The Second Circuit has held that an economic interest relating to the conduct of the movants' business constitutes sufficient legal interest for granting intervention. *New York Pub. Research Group, Inc. v. Regents of University of New York State*, 516 F.2d 350, 351–52 (2nd Cir.1975). In *New York Pub. Research Group, Inc.*, the intervention

motions of a pharmaceutical association and three individual pharmacists were granted in an action challenging New York's prohibition on the advertising of prescription drug prices. *Id.* at 351. Reversing the district court, the Court of Appeals reasoned that "[t]here can be little doubt that the challenged prohibition against advertising the price of prescription drugs ... affects the economic interests of members of the pharmacy profession." *Id.* at 351–52.

Any decision by the court concerning the constitutionality of the Kosher Laws will impact Mr. Greenfield's economic interests and business operations as a purveyor of kosher products. I therefore find that movant Greenfield has sufficient legal interest in this action.

### 3. Abe Alper, Jack Lee, Richard Schwartz, and Sheldon Silver in his Individual Capacity

■ Messrs. Alper, Lee, Schwartz, and Silver have personal interests relating to their religion which requires them "to limit their diets to kosher foods only." *Memorandum In Support of Motion To Intervene*, at 6. As consumers of solely kosher products, the movants assert emotional harm if they were to consume non-kosher food erroneously marked kosher. They further contend that the movants have a "pocketbook interest" to the extent that they are willing to continue paying higher prices provided the products they are purchasing are indeed kosher. *Id.* at 6.

The movants have demonstrated a sufficient interest directly related to the pending litigation. They depend upon the Kosher Laws to select foods that comport with their religious and personal preferences. *See Jones v. Butz*, 374 F.Supp. 1284 (S.D.N.Y.) (granting intervention application of seven individuals and five religious organizations because they had "an undoubted interest in the legislation under consideration ... as it affects the production of kosher meat"), *aff'd*, 419 U.S. 806, 95 S.Ct. 22, 42 L.Ed.2d 36

---

**12.** In *Orange Env't Inc.*, the court denied the County of Legislature's application to intervene on the ground that the Legislature's interest in the litigation was identical to that of the County

and were adequately represented by the County, notwithstanding the County's decision not to pursue an appeal. 817 F.Supp. at 1060–61.

(1974). Since the constitutionality of the Kosher Laws are at issue in this dispute, I find that the movant kosher consumers have sufficient interest in the outcome.

For the foregoing reasons, movants Alper, Lee, Schwartz, and Silver in his individual capacity as a kosher consumer, have sufficiently demonstrated a legal interest in the subject matter of this action, that is sufficient for purposes of Fed.R.Civ.P. 24(a)(2).

### 4. Rabbinical and Lay Organizations

The Union of Orthodox Jewish Congregations of America, Rabbinical Council of America, Agudath Israel of America, National Council of Young Israel, The Rabbinical Alliance of America, Agudath Harbonim of the United States and Canada, Torah Umesorah—National Society of Hebrew Day Schools are charitable organizations that represent observant Jewish communities on the local, national, and even an international basis. *Memorandum In Support of Motion To Intervene*, at 2. The intervenors contend that these organizations have perennially encouraged and supported the enactment of legislation designed to protect consumers of kosher products.

Organizations may have sufficient interest to support intervention as a matter of right in actions involving legislation or regulations previously supported by the organization. *See, e.g., Jones v. Butz*, 374 F.Supp. 1284, 1287 (S.D.N.Y.) (intervenor organizations which testified before congressional committees had interest in subsequent litigation), *aff'd*, 419 U.S. 806, 95 S.Ct. 22, 42 L.Ed.2d 36 (1974). In *Jones v. Butz*, the trial court granted the applications for intervention of seven individuals and five organizations that represented the "entire spectrum of Jewish organizational life" after concluding that "[t]he intervenors have an undoubted interest in the legislation under consideration here in as much as if affects the [slaughtering of] kosher meats." *Id.; see also Washington State Bldg. and Constr. Trades Council, AFL–CIO v. Spellman*, 684 F.2d 627, 629–30 (9th Cir.1982) (public interest group that sponsored statute as a ballot initiative had a right to intervene in an action challenging the constitutionality of the statute); *Herdman*, 163

F.R.D. at 187 (public interest group that "took an active role" in drafting a law "has a clear interest in the continuing constitutional viability of that law."); *New York Pub. Research Group, Inc.*, 516 F.2d at 350 (pharmacists' organization and individual pharmacists permitted to intervene as of right in an action brought by consumers challenging a state regulation prohibiting the advertising of the price of prescription drugs).

The intervenors in the present action have a similar interest in upholding the constitutionality of the Kosher Laws. The trial court's decision will have ramifications on the preparation of kosher foods within this state, and therefore, the undersigned finds that these organizations have a clear interest in the outcome of the litigation. *See Butz*, 374 F.Supp. at 1286.

For the foregoing reasons, the movant rabbinical and lay organizations have demonstrated a sufficient legal interest in the subject matter of this action for purposes of Rule 24(a)(2) Fed.R.Civ.P.

### 5. Rabbi Moshe Portnoy

Moshe Portnoy is an Orthodox rabbi who resides in Plainview, New York, a neighboring town to Commack, where he is the rabbi of a local congregation. He asserts that his position frequently requires him to field questions concerning purveyors of kosher products.

*Memorandum In Support of Motion To Intervene*, at 5

Rabbi Portnoy's professional duties and responsibilities are directly related to the enforcement and constitutionality of the New York Kosher Laws. This interest is sufficient for purposes of Rule 24(a)(2) Fed. R.Civ.P. *See New York Pub. Research Group, Inc., et al. v. The Regents of the Univ. Of the State of New York et al.*, 516 F.2d 350, 351–52 (2d Cir.1975) (holding that pharmacists "have an interest in the action as professionals since any lifting of the [advertising] prohibition ... might well lead to significant changes in the profession and in the way pharmacists conduct their busi-

nesses."); *Jones v. Butz,* 374 F.Supp. 1284 (S.D.N.Y.1974).

For the foregoing reasons, Rabbi Portnoy has a demonstrated a sufficient legal interest in the subject matter of this action.

## C.   Effect of Disposition of This Action on Intervenors' Interest

■   The third prong of the intervention as of right standard is satisfied where the intervenors demonstrate that, absent intervention, "the disposition of the action may, as a practical matter, impair or impede" its interests. *United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 70 (2d Cir.1994); *Herdman,* 163 F.R.D. at 188.

The movants have demonstrated sufficient legal interest based on religious, professional, economic, and consumer involvements.   If the court were to find the Kosher Laws unconstitutional, these interests undoubtedly will be impaired.

## D.   Representation of the Intervenors' Interests by the State

Generally, an applicant for intervention as of right has a "minimal burden" of showing inadequate representation by a named-party. *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972); *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 922 F.2d 92, 98 (2d Cir.1990); *United States Postal Serv. v. Brennan,* 579 F.2d 188, 191 (2d Cir.1978); *Herdman,* 163 F.R.D. at 189.   However, where a state is a party to an action involving its sovereign interest, the state is presumed to represent the interests of all its citizens.   *United States v. State of New York,* 820 F.2d 554, 558 (2d Cir.1987); *United States v. Hooker Chemicals & Plastics Corp.,* 749 F.2d 968, 984–85 (2d Cir.1984).   "Thus, to intervene in a suit in [the] district court in which a state is already a party, . . . [the movant] must overcome [the] presumption of adequate representation.   A minimal showing that the representation may be inadequate is not sufficient." *Hooker Chemicals & Plastics Corp.,* 749 F.2d at 984–85; *see* 3B *Moore's Fed. Practice* ¶ 24.07[4], at 76 (1996).   The movant must effectively demonstrate that its

interest is different from that of the state and that its interest will not be represented by the state.   *Hooker Chemicals & Plastics Corp.,* 749 F.2d at 984–85 (citation omitted).

■   The State of New York is a party to this action representing a public official of its Department of Agriculture and Markets. Section 63 of the N.Y. Executive Law, provides that the State Attorney–General is charged with the responsibility of "[p]rosecut[ing] and defend[ing] all actions and proceedings in which the state is interested . . ."

A state "is presumed to represent the interests of its citizens . . . when it is acting in the lawsuit as a sovereign." *United States v. New York,* 820 F.2d 554, 558 (2d Cir.1987). In *United States v. Yonkers Bd. of Educ. et al.,* 902 F.2d 213 (2d Cir.1990), this principle was applied to preclude intervention by members of the city's parks and recreation board for the purpose of appealing an order re-dedicating certain parkland in Yonkers for use as the site of a high school.   Neither the City of Yonkers nor the State had appealed the de-dedication order of the district court. The intervenors' request to appear in their individual capacities was denied on the ground that their only cognizable interest in the litigation was in the "maintenance of . . . state legislative procedures pursuant to which parkland ordinarily is de-dedicated." *Id.* at 218.   The court found that those interests were adequately represented by the State of New York which has "sovereign authority over the legislative interests" which the proposed intervenors sought to protect. The Court of Appeals noted that "[i]f disagreement with an actual party over trial strategy, including over whether to challenge or appeal a court order, were sufficient basis for a proposed intervenor to claim that its differences were not adequately represented, the requirement [that a state is presumed to represent the interests of its citizens when acting as a sovereign in litigation] would be rendered meaningless." *Id.* at 218.

■   The State and the proposed intervenors vigorously dispute whether the State is

acting in its *parens patriae* [13] capacity in this action. In 1987, the Circuit made a brief comment on *parens patriae* in *Natural Resources Defense Council, Inc. v. New York State Dep't of Envtl. Conservation.* 834 F.2d 60 (2d Cir.1987). An association of gasoline station owners there sought to intervene in a suit brought against the federal and state government defendants pursuant to § 304(a) of the Clean Air Act, 42 U.S.C. § 7604(a). The district court denied intervention. While affirming the trial court, the court of appeals referred to its decision in *Hooker Chemicals* noting that the action "[was] not a case where a governmental entity [was] suing as *parens patriae* . . . ." *Id.* at 61–62, arguably implying that *parens patriae* did not apply where the State was a defendant.

In *Herdman v. Town of Angelica,* 163 F.R.D. 180 (W.D.N.Y.1995), an environmental group moved to intervene as a party defendant in an action brought by the operators of a proposed waste disposal facility against the Town of Angelica. 163 F.R.D. at 181–82. The court granted the intervenor's motion, relying in part, on its understanding of the Court of Appeals opinion in *Natural Resources Defense Council, Inc.,* that *parens patriae* is limited to actions brought by the government. *Id.* at 190 (stating that "[a] careful reading . . . indicates that by 'litigation of this sort,' the court meant enforcement actions brought by government plaintiffs."); *see Hooker Chemicals,* 749 F.2d at 985; *Natural Resources Defense Council, Inc.,* 834 F.2d at 61–62.

On the other hand, in *Orange Env't Inc., v. County of Orange, supra,* Judge Goettel recognized the doctrine of *parens patriae* where Orange County was defending its "publicly owned and operated landfill" in an action brought by environmental groups for permitting unlawful discharges of pollutants on federally protected wetlands for violation of the Clean Water Act, 33 U.S.C. § 1251 *et seq.,* and CERCLA, 42 U.S.C. § 9601 *et seq.* 817 F.Supp. at 1060 ("The County acts here in its capacity as *parens patriae,* the guardian, the benefactor, and representative of all citizens concerning matters of waste disposal and the environment."). The Court of Appeals affirmed "for substantially the reasons stated by . . . [the district court] in his thorough opinion." 2 F.3d at 236.

The role of the State in defending the constitutionality of the state statute herein is just as much in the sovereign interest of the State of New York as its role in bringing an enforcement action as a party plaintiff. The distinction argued by the intervenors with respect to prosecuting or defending is a superficial one. The important fact is that the State appears herein in its sovereign capacity to protect the health, safety, and welfare of its citizens by defending the constitutionality of the State enactment which is the subject of this litigation.

The proposed intervenors' reference to newspaper articles that this litigation may be settled on terms that "will not contemplate full and vigorous future enforcement" is vague, indefinite and speculative, at best. *Memorandum of Law in Support of Motion to Intervene as Defendants,* at 7–8. The Attorney–General has expressed—albeit totally unnecessary in view of his oath of office—a commitment to uphold the constitutionality of the Kosher Laws. Moreover, the court does not credit the proposed intervenors' assertion that the State will not be able to provide the court with adequate evidence

---

**13.** The doctrine of *parens patriae* derives from the English common law. The King retained "a royal prerogative to act as guardian to persons with legal disabilities such as infants," *Black's Law Dictionary* 1114 (6th ed. 1995), and exercised these powers in his capacity as the "father of the country" by designating a chancellor to represent the crown's interest in the courts of common law and equity. *Hawaii v. Standard Oil Co. of California,* 405 U.S. 251, 257, 92 S.Ct. 885, 888–89, 31 L.Ed.2d 184 (1972) (citations omitted); 3 *W. Blackstone, Commentaries* *47.

The *parens patriae* function of the English crown has been passed to the States. Under this doctrine, the State has the right "to prevent or repair harm to its 'quasi-sovereign' interests." *Hawaii v. Standard Oil Co. of California,* 405 U.S. at 258, 92 S.Ct. at 889. This Circuit has recognized that "'health, comfort and welfare' of the people, interstate water rights, pollution-free interstate waters, protection of the air from interstate pollutants, and the general economy of the state" fall within the class of sovereign interests. *See West Virginia v. Chas. Pfizer & Co., Inc.,* 440 F.2d 1079, 1089 (2d Cir.1971) (citation omitted).

pertaining to the application of the Kosher Laws.

The intervenors have failed to establish that their interest in sustaining the constitutionality of the Kosher Laws will not be adequately represented by the Attorney–General. Since the intervenors have not satisfied this prerequisite pursuant to Fed. R.Civ.P. 24(a)(2), their application to intervene as of right is denied.

*E. Representation of Speaker Silver in his Official Capacity by the State*

■■■ Both parties and the intervenors rely upon the district court decision in *Orange Env't, Inc. v. County of Orange, supra,* to support their respective positions with respect to the adequacy—*vel non*—of the State's representation of Speaker Silver in his official State capacity. In *Orange Env't, Inc.,* the entire Orange County Legislature sought to intervene in an environmental action which had been brought against the County. The legislature filed its motion after the County Executive of Orange County announced that there would be no appeal of the district court's finding that the County had violated the Clean Water Act, 33 U.S.C. § 1251 *et seq. Orange Env't, Inc.,* 817 F.Supp. at 1054. The court denied intervention on the grounds that the Legislature's interest was identical to that of the County as a whole, and according to the Orange County Charter, this interest was represented by the County Executive and the County Attorney. *Id.* at 1055–57.[14]

While the court agrees with the district court's reasoning in *Orange Env't Inc.,* that case is distinguishable from the one here in that (1) the proposed intervenors there were the entire County Legislature; and (2) the

County Attorney and County Executive had decided that the County would not pursue an appeal.[15] *Id.*

The court instead looks to *United States v. Yonkers Bd. of Educ. et al., supra.* The Court of Appeals there confirmed the district court's denial of intervention sought by individual members of the city's parks and recreation board in their official capacity. The City of Yonkers was a named defendant in the action. The Court of Appeals noted that "the City must eventually speak with one voice...." *Yonkers Bd. of Educ. et al.,* 902 F.2d at 217.

The same is true here where the sovereign interest of the State of New York is involved. It is the responsibility of the New York Attorney–General, § 63 of the New York Executive Law, to prosecute and defend all proceedings in which the State is a party:

> Prosecute and defend all actions and proceedings in which the state is interested, and have charge and control of all the legal business of the departments and bureaus of the state, or of any office thereof which requires the services of attorney or counsel, in order to protect the interest of the state, ....

N.Y.Exec.Law § 63 (McKinney 1993). The Attorney–General has declared that he intends to fully defend the constitutionality of the Kosher Laws. Although Speaker Silver undoubtedly has a valid interest as a legislator in seeing a law for which he voted—and which passed the State Assembly—sustained in the face of constitutional challenge, his interest as Speaker of the Assembly is identical to that of the interest of the State of New York, which the New York Attorney–General is obliged to uphold.[16] *See Delaware Valley*

**14.** The court stated,

> The present litigation does not concern the Legislature *qua* Legislature; it concerns the interests of the County as a whole. The County Legislature undoubtedly has institutional interests in its appropriations and lawmaking powers under the Orange County Charter. However, the Legislature's interests in this matter are identical to those of the County and the County Executive, namely pursuing the best interests of the citizens of Orange County.

*Orange Env't, Inc.,* 817 F.Supp. at 1056.

**15.** New York County Law § 501 (McKinney 1993) provides, in relevant part:

> The county attorney shall prosecute and defend all civil actions and proceedings brought by or against the county, the board of supervisors [or county legislature, where applicable] and any officer whose compensation is paid from county funds for an official act, except as otherwise provided by this chapter or other law.

**16.** During oral argument, the Assistant Attorney–General stated, "The Attorney–General intends to defend the statute. He intends to in this Court.

*Citizens' Council For Clean Air v. Commonwealth of Pennsylvania*, 674 F.2d 970, 974 (3d Cir.1982) (denying state legislators motions to intervene on grounds that there was "no divergence between [the legislators'] position and the position of the Commonwealth. . . ."). Under the circumstances presented here, the court finds that Speaker Silver's interest, in his official capacity, is the same as the State's interest and will adequately be represented by the New York Attorney–General.

## II. *Permissive Intervention*

The intervenors also seek to intervene pursuant to Federal Rules of Civil Procedure Rule 24(b)(2). Permissive intervention may be granted "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R.Civ.P. 24(b)(2). In analyzing Rule 24(b)(2), "the words claim or defense are not to be read in a technical sense, but only require some interest on the part of the applicant." *Dow Jones & Co, Inc. v. United States Dept. of Justice*, 161 F.R.D. 247, 254 (S.D.N.Y. 1995); *Brooks v. Flagg Bros., Inc.*, 63 F.R.D. 409 (S.D.N.Y.1974); 3B *Moore's Federal Practice* ¶ 24.20[2]. Rule 24(b)(2) is satisfied "where a single common question of law or fact is involved, despite factual differences between the parties." *Rivera v. New York City Hous. Auth.*, 1995 WL 375912, at *3 (S.D.N.Y. June 23, 1995) (quoting *McNeill v. New York City Hous. Auth.*, 719 F.Supp. 233, 250 (S.D.N.Y.1989)) (citations omitted). These varying facts and circumstances may add to the court's understanding of the claims. *Id.; McNeill*, 719 F.Supp. at 250; *see also Ellender v. Schweiker*, 550 F.Supp. 1348, 1360 (S.D.N.Y.1982) (intervention permitted where plaintiffs are not prejudiced and adds to the Court's understanding of the facts). The district court's discretion under Rule 24(b)(2) is very broad. *Dow Jones & Co., Inc. v. United States Dep't of Justice*,

161 F.R.D. 247, 254 (S.D.N.Y.1995) (citing *H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir.1986)); *see, e.g., New York News, Inc. v. Kheel*, 972 F.2d 482, 487 (2d Cir.1992) ("[t]he district court has broad discretion to deny an applicant's motion for intervention under Rule 24(b)(2).").

The principal consideration of a Rule 24(b)(2) motion is whether the intervention will unduly delay or prejudice the rights of the existing parties. *United States Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978); *see Dow Jones & Co., Inc.*, 161 F.R.D. at 254; *In re Joint E. & S. Dist. Asbestos Litig.*, 878 F.Supp. 473, 511–12 (E. & S.D.N.Y.1995). The intervenors in this case have questions of law and fact in common with the parties. The intervenors include rabbis, kosher consumers, and rabbinical and lay organizations all with an interest in the enforcement and the constitutionality of the Kosher Laws. The intervenors will bring a different perspective to the case and will contribute relevant factual variations that may assist the court in addressing the constitutional issue raised. Moreover, intervention comes early in this action. There is no indication that a final determination on the merits will be unduly delayed or that the original parties will be prejudiced by intervention at this time.[17] Moreover, the intervenors have agreed that they will be represented by the same counsel.[18] *See Dow Jones & Co., Inc.*, 161 F.R.D. at 254. Considerations of fairness weigh in favor of the intervenors in light of their knowledge and strong interest in the subject matter of this action. *See Miller v. Silbermann*, 832 F.Supp. 663, 673–74 (S.D.N.Y.1993).

The court finds that the movants satisfied the requirements for permissive intervention. Therefore, the intervenors' motion to intervene pursuant to Fed.R.Civ.P. 24(b)(2) is granted, including Sheldon Silver in his indi-

---

He intends to defend it in the Second Circuit. If it goes to the State Court he intends to defend it there" (22).

**17.** Should a need arise in the future for restrictions the court is authorized to impose appropriate conditions. *See generally Cutler v. American Fed'n of Musicians*, 34 F.R.D. 253, 255 (S.D.N.Y. 1963) (granting permissive intervention on the

condition that no additional discovery be conducted).

**18.** By letter, dated November 5, 1996, the intervenors informed the undersigned that Nathan Lewin, Esq., will serve as counsel for all of the proposed intervenors in this action.

vidual capacity, on the condition that all the intervenors will be represented by one counsel.

### CONCLUSION

For the reasons stated above, the intervenors' motion to intervene as of right, pursuant to Fed.R.Civ.P. 24(a)(2), is denied. The proposed intervenors' motion for permissive intervention pursuant to Fed.R.Civ.P. 24(b)(2), is granted, provided that with respect to intervenor Sheldon Silver, intervention shall be limited to his individual capacity.

SO ORDERED.